## CIRCUIT COURT OF WARREN COUNTY

Fred W. McLaughlin et al.

v.

Town of Front Royal et al.

February 28, 1996

Case No. (Chancery) 94-73

BY JUDGE JOHN E. WETSEL, JR.

This is an action filed by the Plaintiffs against the Defendants for alleged civil rights violations arising from the Town of Front Royal's refusal to provide sewer service to the Plaintiffs' property pursuant to the express terms of a 1976 annexation decree. This case came before the Court on February 20, 1996, for argument on the Plaintiffs' Motion for Partial Summary Judgment and the Defendants' Motion for Summary Judgment. Robert C. Fitzgerald and Myron Smith, Esquires, appeared for the Plaintiffs, and Glenn M. Hodge and Jennifer E. Kirkland, Esquires, appeared for the Defendants.

Upon consideration of the argument of the parties and their memoranda of authorities, the Court has made the following decision to grant the Plaintiffs' Motion for Partial Summary Judgment and to grant the Defendants' Motion for Summary Judgment on the conspiracy count and the Freedom of Information Act right of action.

## I. *Statement of the Case*

This litigation is a continuation of litigation that was commenced in 1987 in the United States District Court for the Western District of Virginia. It has its genesis in an annexation by the Town of Front Royal of certain surrounding Warren County property which was concluded in 1976. The Plaintiffs are owners of property that was annexed into the Town of Front Royal by the 1976 annexation. The property had been purchased by Plaintiffs in 1964.

The 1976 annexation order was effective December 31, 1976, and it required the extension by the Town of Front Royal of interceptor and collector sewer lines into the annexed area within five years from the effective date of the annexation. Accordingly, the sewer lines required to be constructed by the annexation order had to be installed by December 31, 1981.

On December 2, 1985, the Plaintiffs filed a request for sewer service and the Town of Front Royal denied this request at a regularly scheduled meeting on June 9, 1986. Thereafter, on February 12, 1987, the Plaintiffs filed suit in the United States District Court for the Western District of Virginia. The suit claimed that Plaintiffs' rights under 42 U.S.C. § 1983 had been denied in that there had been a taking of their property without compensation and due process and they had been denied equal protection. At the same time the Front Royal and Warren County Industrial Park Corporation (a Virginia stock corporation of which at least one of the Plaintiffs was a stockholder) filed a similar suit in the United States District Court for the Western District of Virginia, claiming it had been denied sewer service required under a 1978 annexation order. The 1978 annexation order had been amended so that the lines in question in that case were required to be constructed by December 27, 1985. These two cases were consolidated, and judgments ultimately were entered for both plaintiffs.

The Town of Front Royal and the individual defendants appealed the decision to the Fourth Circuit Court of Appeals and that Court, by opinion rendered on September 19, 1991, vacated the judgments and remanded the cases to the District Court with instructions for the plaintiffs to proceed in

state court. In 1992 the Front Royal and Warren County Industrial Park Corporation proceeded in state court by filing for a writ of *mandamus* to compel the construction of certain sewer lines and for damages claimed because of the failure to construct the lines. This Court entered a writ of *mandamus* requiring the Town of Front Royal to construct certain lines, but denied the Front Royal and Warren County Industrial Park Corporation's claim for damages. Both parties appealed this Court's decision. An appeal was granted to the Town of Front Royal on the issuance of the writ of *mandamus*, while the Front Royal and Warren County Industrial Park Corporation was denied its appeal on the Court's denial of damages. The Virginia Supreme Court affirmed this Court's issuance of the writ of *mandamus*.

Rather than proceeding with an action in the state court as directed by the Fourth Circuit Court of Appeals in 1991, the Plaintiffs in this case filed a motion in May of 1992 with the Federal District Court to reinstate the judgment, claiming that no relief was available in the state court. The District Court reinstated the judgment, and the Defendants appealed the matter to the Fourth Circuit Court of Appeals. The judgment was again vacated and remanded by the Fourth Circuit by opinion rendered on April 5, 1994, with instructions to the Plaintiffs to proceed in state court. Consequently, on May 18, 1994, this action ensued.

The Defendants filed a Plea of the Statute of Limitations and a Demurrer to the Motion for Declaratory Judgment, which this Court sustained in part and denied in part by Opinion and Order dated September 2, 1994. Specifically, the Court sustained the plea of the statute of limitations as to counts I, II, and V, and sustained the demurrer to the claim for unconstitutional taking of the Plaintiffs' property in count III. The only claims remaining at this point are as follows.

1. In count III of the Motion for Declaratory Judgment, Plaintiffs seek compensatory and punitive damages, with attorney's fees and costs, for

Defendants' alleged violations of 42 U.S.C. § 1983, specifically alleging that Defendants violated their federal due process and equal protection rights in refusing to extend a sewer line to serve Plaintiffs' property.

2. In count IV of the Motion for Declaratory Judgment, Plaintiffs seek damages against the individually named defendants, plus attorney's fees and costs, for allegedly combining and conspiring in their official and individual capacities to avoid complying with the 1976 Annexation Decree regarding installation of a sewer line that would serve Plaintiffs' property.

## II. Statement of Material Facts

The following facts are established in the record and are not in dispute.

The Town of Front Royal is a municipal corporation created by the Acts of the Virginia General Assembly. The Town, at all times relevant to this proceeding, was governed by a Town Council consisting of four councilmen. The Mayor of the Town is an elected official who presides over Town Council meetings but who is permitted to vote on matters acted on by the Town Council only in the event of a tie vote by the Council.

The Town Manager is the chief administrative officer of the Town and is appointed by the Town Council. The Town Manager cannot vote on any matter acted on by the Town Council.

The terms of Councilmen Banks and Ruff expired on June 30, 1986, at which time they were replaced by newly elected Councilmen.

In 1976 the Town annexed from Warren County approximately 4.23 square miles into the Town's corporate limits, with the effective date of the annexation being midnight on December 31, 1976. The 1976 annexation court's decree specifically ordered that:

> *Sewer Facilities*: The Town of Front Royal shall proceed to construct interceptor and collector sanitary sewer lines in the areas herein decreed to be annexed as shown for such areas on Town Exhibit 13; the lines as shown on said Exhibit for the annexation area hereby decreed shall be installed as soon as they become reasonably necessary and it becomes economically feasible so to do to serve the residents of the annexation area, but said improvements shall in any event be completed within five years from the effective date of annexation. 1976 Decree of Annexation, Section 5(c)(2).

Exhibit 13 is a large map of Front Royal on which the annexed areas are highlighted. The routes of the sewer lines to be constructed are shown by

broken lines, which are highlighted in bright red orange. Exhibit No. 13 to the 1976 annexation decree was prepared for the Town of Front Royal and offered by the Town through its counsel in the annexation proceeding as the Town's plan to construct interceptor and collector sanitary sewer lines to serve the residents of the annexed area annexed.

Fred W. and Gladys L. McLaughlin (the McLaughlins) purchased a tract of land containing approximately 55 acres in 1964 at which time the land was located in Warren County. The 55-acre parcel is included within the area annexed by the Town in 1976. The 55-acre parcel had approximately twenty-six feet of frontage on Route 647, also known as Happy Creek Road, and it had access to Route 647 by Swan Road, a fifty-foot private roadway over which the McLaughlins had a right-of-way appurtenant to the 55-acre tract. In 1976, shortly before the effective date of the 1976 annexation, the McLaughlins subdivided their 55 acre tract into a subdivision known as Happy Creek Knolls containing eight five-acre lots, together with streets within the 55-acre tract serving the eight lots.

Exhibit 13 to the 1976 Annexation Decree shows an interceptor sewer line along Route 647 at or near the McLaughlins' 55-acre tract. The Town did not construct an interceptor sewer line along Route 647 to a point at or near the McLaughlins' 55-acre tract by December 31, 1981, as shown on Exhibit 13 to the Annexation Decree.

In the fall of 1985, the McLaughlins presented to the Town Planning Commission a proposed plat of a subdivision of one of the five-acre lots in Happy Creek Knolls Subdivision into small lots containing approximately 10,000 square feet each. In 1985, and at all times relevant to this proceeding, the 55-acre tract was zoned R-1 under the Front Royal Zoning Ordinance. R-1 zoning permitted lots with a minimum area of 40,000 square feet with on lot water and sewer, lots with a minimum area of 30,000 square feet with public water *or* public sewer available, and lots with a minimum area of 10,000 square feet with public water *and* public sewer. At all times relevant to this proceeding, the Town Subdivision Ordinance required that access roads to a subdivision be sixty feet in width. The 55 acres did not have adequate frontage to provide a sixty-foot access road. The McLaughlins were required to obtain additional frontage in order to further subdivide Happy Creek Knolls Subdivision, which they acquired in December, 1989.

In 1985, there was public water supplied by the Town available to the 55-acre tract from a Town water line which crosses the 55-acre tract.

The Planning Commission advised the McLaughlins that in order to have a subdivision of lots containing a minimum area of 10,000 square feet, the lots would have to be served by public sewer. The Planning Commission recommended that the McLaughlins obtain from the Town an availability date for public sewer to serve the 55-acre parcel. On December 2, 1985, the Plaintiffs made formal written application to have the sewer line extended to provide service to the property and called attention to the annexation decree that required that the sewer line be installed. By letter of December 4, 1985, the Defendants were advised by the town attorney that the town had a duty to install the sewer line under the Annexation Decree. Plaintiff's Exhibit 4.

The Town Code required that the property owners along the route of the line pay certain fees, which the Plaintiffs were prepared to pay, and that a public hearing be held. The public hearing was held on February 10, 1986, and several property owners, who would be assessed for the sewer line, spoke in opposition to the request, and the town claims that this citizen opposition justified their refusal to provide the sewer service to the Plaintiff's property. Prior to the public hearing, the Town Engineer, Eugene Tewalt, provided to the Town a cash estimate for providing sewer service to the McLaughlins' property of $180,441.00 and further estimated that the Town would recover $21,652.92 of the cost by assessment of property owners whose property abutted the proposed sewer line.

The Town Council took the Plaintiffs' request under consideration and referred it to an informal work session for further consideration. The matter was discussed at the work session on February 19, 1986, and again on May 20, 1986.

Prior to the council meeting of June 9, 1986, defendant Brackenridge Bentley, town manager, prepared and distributed to the Mayor and all Town Council members an agenda item form on the request for sewer line extension in the Happy Creek area, that included a proposed motion to deny the requests of Mr. Fred W. McLaughlin and the Front Royal-Warren County Industrial Park Corporation for sewer line extension.

The defendant John K. Marlow, mayor, initiated the action by the town council members at the council meeting on June 9, 1986, to deny the application of the complainants, by bringing the matter up and proposing that the letter to the complainants dated June 10, 1986, be read and made a part of the public record.

The minutes of the Town Council meeting held on June 9, 1986, reflect that, after the Clerk read letters addressed to Mr. Fred W. McLaughlin and

Mr. Howard A. Duncan, President, Front Royal-Warren County Industrial Park Corporation, Vice-Mayor Ruff moved, seconded by Councilman Kitts, that Council deny the requests made for sewer line extension in the Happy Creek area received from the Front Royal-Warren County Industrial Park Corporation and from Mr. Fred W. McLaughlin. The minutes further reflect that the vote was a unanimous "yes."

Complainants' application for sewer line extension and that of the Front Royal and Warren County Industrial Park Corporation were reviewed and addressed separately in Council meetings, work sessions, and public hearings, but the Council considered the two separate applications as one agenda item involving the "Happy Creek area" on June 9, 1986, and took action to deny both requests.

The letter written by or for defendant Brackenridge Bentley, town manager, dated June 10, 1986, advising the Complainants that their sewer application was denied was written and distributed to defendant John K. Marlow, mayor, and all council member defendants prior to the council meeting on June 9, 1986.

Mayor John K. Marlow was also President of Property 55, Inc.; in his capacity as a citizen, he made a letter application to the Town, directed to Town Manager Bentley dated November 3, 1986, requesting that the Town extend sewer service out Route 55 East to provide sewer service to "the Heritage Subdivision." The letter application stated that the area was annexed in 1976 and had been waiting for water and sewer "to be provided as stipulated in the annexation order." John Marlow disclosed his interest in the Heritage Subdivision, relinquished his position as Mayor, and requested sewer service to the Heritage Subdivision as a citizen of the Town. Marlow's property in the annexed area also required a sewer line to be installed to be able to develop and sell the vacant lots on his property.

Following a public hearing on December 8, 1986, the defendant members of the town council, except George E. Banks and Albert G. Ruff, Jr., voted to "take no action" on the sewer line request of defendant Mayor Marlow "until a full engineering report is received," and defendant Kitts requested that the council be provided with information relating to water and sewer "as addressed in past annexation orders."

From December 8, 1986, to January 26, 1987, there is no record that the matter of installation of the sewer line to service defendant Mayor Marlow's property was considered at a work session of the council members.

At the meeting of the town council on January 26, 1987, without any "full engineering report" having been prepared or received and without

mention of the Annexation Decree, the defendant members of the town council, except for defendants council members George E. Banks and Albert G. Ruff, Jr., voted to approve the extension of the sewer line to serve defendant Mayor Marlow's land.

The town council, upon presentation and recommendation of the mayor and town manager, reviewed and/or prepared and adopted the budgets of the town for the fiscal years 1985, 1986, and 1987. All of the individual defendants knew or should have known the financial condition of the town's utility funds.

Without sewer lines extended to serve the Plaintiffs' property the Plaintiffs could not subdivide their property into small residential lots in the same manner as defendant John K. Marlow was permitted and as permitted by the town's Zoning Ordinance.

As the result of development on nearby tracts, by August 22, 1988, sewer lines terminated at or near the intersection of Stuart Drive and Swan Road and Goodview Drive and Swan Road, which was within approximately fifty feet of the Plaintiffs' property. Notwithstanding the fact that the McLaughlins had an easement over Swan Road and the Town had an easement for utility lines across Swan Road at its intersection with Stuart Drive, the McLaughlins insisted they did not have a right to cross under Swan Road with a sewer line to connect to the Town lines. The Town then ran sewer lines from Stuart Drive and London Drive across Swan Road to the McLaughlins' property. These extensions were completed on September 29, 1989, and October 4, 1989, respectively.

After the effective date of the 1976 annexation court's decree, the town of Front Royal installed some sewer lines in the annexed area which served some vacant, unimproved lots and parcels of land.

### III. *Conclusions of Law*

#### 1. *Summary Judgment*

Summary Judgment is appropriate if there is no material fact genuinely in dispute. Supreme Court Rule 3:18; *Carson v. LeBlanc*, 245 Va. 135, 139, 427 S.E.2d 189 (1993). In *Metro Machine Corp. v. Mizenko*, 244 Va. 78, 83, 419 S.E.2d 632 (1992) citing *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977), *cert. denied*, 436 U.S. 913 (1978), the Supreme Court analyzed the character of the genuine issue of fact criterion governing the Court's disposition of a motion for summary judgment and stated:

[T]he issue of fact must be "genuine." When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

The Supreme Court of Virginia frowns on the short-circuiting of litigation where there are genuine issues of fact in dispute or conflicting inferences which may be drawn from uncontested facts, *see Renner v. Stafford*, 245 Va. 351, 429 S.E.2d 351 (1993), and *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993) (ruling on demurrer). However, in this case the Court is the trier of the facts, and the parties have submitted extensive statements of facts. Study of those proposed statements of fact discloses that the underlying facts are not materially in dispute with respect to the Plaintiffs' substantive claim in Count III of their motion for judgment that the Defendants violated their federal due process and equal protection rights, rather it is on the inferences to be drawn from those facts that the parties disagree. Nor is the underlying evidence in dispute with respect to the Plaintiffs' conspiracy claim set forth in Count IV of their Motion for Judgment. Therefore, this case is ripe for resolution by summary judgment.

### 2. *Governmental Immunity*

Generally, governmental immunity applies to an action against a municipal corporation for its failure to provide the public with municipal sewer services. *See Stansbury v. Richmond*, 116 Va. 205, 209, 81 S.E. 26 (1914). In the absence of the mandate in the 1976 Annexation Decree, the general duty of the Town to provide sewer service in the annexed area is that described in McQuillen, *Municipal Corporations*, § 53.119 (3d ed.):

The establishment of sewers and drains by a municipal corporation is the exercise of a legislative or quasi-judicial power, and the legislative body of the municipality is the sole judge of the necessity for such action. At common law, a municipal corporation is under no obligation to provide drainage or sewage for its inhabitants, unless rendered necessary by its own act . . . .

*Accord Miller and Myers v. City of Newport News*, 101 Va. 432, 44 S.E. 712 (1909); and *Smith v. City of Bristol*, 14 Va. Cir. 8 (Bristol 1987). "Generally speaking, the construction of sewers and drains involves the exercise of discretionary powers which the courts will not ordinarily undertake to control, and mandamus does not lie to control municipal discretion with regard to the construction or extension of sewer systems . . . ." 56 Am. Jur. 2d, *Municipal Corporations*, § 571. However, in this case the Town's duty under the annexation decree to provide sewers to the Plaintiffs was a ministerial act, which is distinctly different from the discretionary nature of the general municipal obligation to provide sewers, which would exist in the absence of the mandatory terms of the annexation decree.

### 3. *Federal Civil Rights Claims*

Section 1983 originated as part of the Ku Klux Act of 1871 as an exercise of Congress' power to enforce the Fourteenth Amendment to the U.S. Constitution. *Monroe v. Pape*, 365 U.S. 167, 171, 81 S. Ct. 473, 475, 5 L. Ed. 2d 492, 496 (1961). It creates a "species of tort liability" for violation of certain federal rights. *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d 128, 136 (1976). A successful plaintiff can recover not only damages, but also attorney's fees pursuant to 42 U.S.C. § 1988.

The nature of a Section 1983 action has been described by the U.S. Court of Appeals for the Fourth Circuit as follows:

> The essential elements to be proved in any section 1983 action are (1) that the defendant was acting under color of state law in the actions complained of; and (2) that the defendant deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. If there is no violation of a federal right, there is no basis for a section 1983 action . . . .

*Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988) (citation omitted). Section 1983 claims are generally based upon denials of rights found in the First, Fourth, Fifth, and Fourteenth Amendments to the U. S. Constitution, and they are most frequently due process and equal rights protection claims.

The Fourth Circuit has held that a Section 1983 action cannot be based solely on a violation of state law or even on an intentional violation of state law. *Id.* at 163. This prohibition against the use of Section 1983 to bootstrap state law claims into claims for damages and attorney's fees

under Section 1983 has been uniformly followed by the federal courts. *E.g.*, *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990); *Doe v. Connecticut Department of Child and Youth Services*, 911 F.2d 868, 869 (2d Cir. 1990); *Pesce v. J. Sterling Morton High School*, 830 F.2d 789, 795 (7th Cir. 1987). Moreover, the Supreme Court has specifically held that violations of state law do *not* constitute "a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question." *Gryger v. Burke*, 334 U.S. 728, 731, 68 S. Ct. 1256, 1258, 92 L. Ed. 1683 (1948). However, this case does not involve an interpretation of state law by public officials or a discretionary function of public officials, it is a case where a Town initiated annexation proceedings and then flagrantly failed to comply with the clear terms of the Annexation Decree; by doing so the Town violated "clearly established . . . constitutional rights of which a reasonable person would have known." *See Dimeglio v. Haines*, 45 F.3d 790 (4th Cir. 1995).

## 4. *Due Process*

The Supreme Court of the United States discussed the difference between substantive and procedural due process in *United States v. Salerno*, 481 U.S. 739, 95 L. Ed. 2d 697, 708, 107 S. Ct. 2095 (1987):

> The Due Process Clause of the Fifth Amendment provides that "No person . . . be deprived of life, liberty, or property, without due process of law . . . ." This Court has held that the Due Process Clause protects individuals against two types of government action. So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 172, 96 L. Ed. 183, 72 S. Ct. 205 (1952), or interferes with rights "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325-326, 82 L. Ed. 288, 58 S. Ct. 149 (1937). When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 18, 96 S. Ct. 893 (1976). This requirement has traditionally been referred to as "procedural" due process.

The Plaintiffs claim that their substantive due process rights were violated by the town's refusal to provide them with sewer service based on their December 2, 1985, application.

In *Sylvia Development Corp. v. Calvert County, Md.*, 48 F.3d 810, 827 (4th Cir. 1995), the Fourth Circuit Court of Appeals discussed the requirements of a viable due process claim:

> To make out a claim that Calvert County violated *substantive* due process, appellants must, in the circumstances of this case, demonstrate (1) that they had a property or property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency. *See Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995) ("Substantive due process is a far narrower concept than procedural; it is an absolute check on certain governmental actions notwithstanding the 'fairness of the procedures used to implement them'.") The protection of substantive due process is indeed narrow and covers only state action which is "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or by any post-deprivation state remedies." *Rucker v. Hartford County*, 946 F.2d 278, 281 (4th Cir. 1991), *cert. denied*, 502 U.S. 1097, 112 S. Ct. 1175, 117 L. Ed. 2d 420 (1992).

## 5. *Constitutionally Protected Property Interest*

The first question in the substantive due process analysis is whether the Plaintiffs' right to have their sewer service application approved rose to the level of a constitutionally protected property interest. *See Gardner v. Baltimore Mayor and City Council*, 969 F.2d 63, 68 (4th Cir. 1992); citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); and *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985). In every case where the courts have held that no constitutionally protected property interest or entitlement existed, the decision turned on the fact that the government agency had discretion in acting on the matter from which the claim arose. This case turns upon the simple fact that after 1981 the town had no discretion to refuse to provide sewer service to the plaintiffs' property.

The determination of a "property interest" protected by the due process clause has evolved from traditional concepts of real and personal property to include a "claim of entitlement." *Gardner, supra.* "Property interests . . . are not created by the Constitution. Rather, they are created by existing

rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to the benefits." *Board of Regents v. Roth*, 33 L. Ed. 2d at 561. Accordingly, the Supreme Court has held that a person receiving welfare benefits under objective standards set by the state has an interest in continued receipt of those benefits that is protected by procedural due process. *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1367 (1970). "To have a [constitutionally protected] interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . . He must have a legitimate claim or entitlement to it." *Eldridge v. Bouchard*, 645 F. Supp. 749, 756 (W.D. Va. 1986), *aff'd*, 823 F.2d 546 (wage differential between state troopers in different regions of the state upheld despite claimed due process and equal protection violations) quoting *Board of Regents v. Roth*, 408 U.S. 564, 571, 33 L. Ed. 2d 548 (1972). *Cf. Last v. State Bd. of Medicine*, 14 Va. App. 906, 421 S.E.2d 201 (1992) (denial of license to practice medicine which was not a constitutionally protected entitlement, so substantive due process analysis did not apply, but procedural due process did).

In the companion case, *Front Royal and Warren County Industrial Park Corp. v. Town of Front Royal*, Law No. CL92000121, this court held that the Town had a mandated, ministerial duty to install the sewer lines in the 1978 annexation order and that the complainant in that case had a valid claim and was entitled to a writ of mandamus compelling the Town to provide the benefit to the property of the Complainant. That decision was upheld by the Supreme Court of Virginia. In the present case, the town's duty to install the sewer to the Plaintiffs' property is more specific and clearer than that in the *Industrial Park* Case. In this case the line ordered by the 1976 annexation court to serve the McLaughlin property had to be built by December 31, 1981. When the Town Council refused to install the line on June 9, 1986, the town's duty to comply with the annexation court's decree remained in force, and that duty was not conditioned upon any property owner in the annexed area making an application for sewer service and was unique to the properties in the annexed area. The "hallmark" of a constitutionally protected property interest is an individual entitlement grounded in state law which cannot be removed without good

cause. *Westbrook v. City of Jackson*, 772 F. Supp. 932, 939 (S.D. Miss. 1991) (Annexation Ordinance obligating city to provide fire protection and install water lines did not give annexed homeowners a substantive property interest, because they were like all other residents of the city and had no unique interest as do the plaintiffs in the instant case), citing *Logan v. Zimmerman Brush*, 455 U.S. 422, 432 (1982).

The town argues that a state law entitlement to municipal sewer service does not transform that expectation into a federal substantive due process right, relying on *Westbrook v. City of Jackson, Miss.*, 772 F. Supp. 932, 940-41 (S.D. Miss. 1991) (Annexation Ordinance obligating city to provide fire protection and install water lines did not give homeowners within the annexed area a constitutionally recognized substantive property interest in services even assuming city had no discretion in whether to provide services); and *Ransom v. Marrazzo*, 848 F.2d 398, 411-412 (3d Cir. 1988) (provision of water and sewer services by a municipality is not a federally protected *substantive* right, though state law restrictions on termination of service may give rise to Fourteenth Amendment *procedural* protections, citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11 (1978)); *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469 (6th Cir. 1993).

The due process clauses of the Fifth and Fourteenth Amendment apply both procedural and substantive constraints upon deprivation of "liberty" and "property." Whether a particular liberty interest or property interest is a protected interest no longer depends upon whether it is a "right" or a "privilege," for the "wooden distinction" between the two has been "fully and finally rejected." *Klimko v. Virginia Employment Comm'n*, 216 Va. 750, 222 S.E.2d 559 (1976) (citing *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 33 L. Ed. 548 (1972)). In a constitutional context, the connotative dimensions of the word "property" are greater than the corporeal definition used by the layman: "the Court has . . . made it clear that the property interest protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Klinko, supra*, quoting *Board of Regents*.

"[W]hether a property owner possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval." *Gardner v. Baltimore Mayor and City Council*, 969 F.2d 63, 68 (4th Cir. 1992). If the Annexation Decree had simply imposed a general duty to provide sewer services in the annexed area as

was done in the Town generally, without requiring specific sewer lines to be built, the defendants could justifiably argue that this case was subject to the rule of *Westbrook v. City of Jackson, supra,* and *Ransom v. Marrazzo, supra.* But the facts of the case at bar are inapposite to those cases. The defendants have persistently ignored the clear, mandatory language of the annexation orders and still argue that all the Town had to do was to treat the area annexed like the rest of the Town and exercise its discretion as to when, or if ever, to install the sewer lines shown on the Town's Exhibit No. 13. *See* Defendants' Memorandum in Support of Motion for Summary Judgment, pp. 17 and 18. While this may have been case between 1976 and 1981, after 1981, the Town had no discretion whatsoever. The Complainants had a right distinct from that of citizens in general to have the sewer lines built to their property, and this was a property right constitutionally protected from arbitrary action by the Town.

## 6. Arbitrary Action

"Protection from arbitrary action is the essence of substantive due process . . . ." 16A Am. Jur. 2d, *Constitutional Law,* § 816. "[T]he deliberate and arbitrary abuse of government power violates an individual's right to substantive due process." *DeBlasio v. Zoning Board of Adjustment,* 53 F.3d 592 (3d Cir. 1995). In *Bello v. Walker,* 840 F.2d 1124 (3d Cir. 1988), the court summarized decisions of the U.S. Supreme Court on the question of substantive due process by stating "these cases reveal that the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process."

Most due process cases charging arbitrary or unreasonable action of governmental agencies or agents arise where the defendant has discretion to act, but acts in an arbitrary or unreasonable manner. In this case the town officials had no discretion, and the defendants' acts were in violation of a court order. The duty to provide sewer service was ministerial in this case, arising from the town council's decision to annex the complainants' property and by its accepting the annexation decree entered by the Court. Both Virginia and federal courts have made it clear that a substantive due process claim does not have to have as its foundation a "taking" of property tantamount to an inverse condemnation.

*Scott v. Greenville County,* 716 F.2d 1409 (4th Cir. 1983), is instructive; in that case the Fourth Circuit, observed that:

> *Arbitrariness, abuse of discretion, caprice or unfairness giving rise to a constitutional claim has been found by other courts in*

*various forms of official permit processing actions.* For example, in *Cordeco Development Corp. v. Vasquez*, 539 F.2d 256, 260, *cert. denied*, 429 U.S. 978, 97 S. Ct. 488, 50 L. Ed. 2d (1976), the First Circuit affirmed a ruling that local officials had committed a constitutional violation by denying a permit applicant for adverse treatment due to "illegitimate 'political' or, at least, personal motives." Such "purposeful discrimination" against a particular individual was held to violate the Constitution even where no recognized class-based or invidious discrimination was involved. *Id.* at 1419-1420. [Emphasis added.]

The Fourth Circuit in *Scott* quoted with approval *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir. 1983):

The regular and impartial administration of public rules governing [liberty and property] interests, as required by due process, prohibits the subtle distortions or prejudice and bias even where no class-based or other generalized invidious discrimination motivates the adverse treatment of a particular applicant. *Scott* at 1420.

The *Scott* court consequently held:

Thus we consider meritorious Scott's contention that, even if he fails to prove racially discriminatory motivation, he has been denied due process of law. Scott's property interest was taken from him by manifest arbitrariness and unfairness. *Id.* at 1420-21.

While the *Scott* court found that Scott, under the facts of that case, could not maintain a taking claim, it held that Scott had a protected property interest in the form of his entitlement to a building permit, so he could maintain his suit for damages for denial of substantive due process protected by the U.S. Constitution. *Id.* at 1421-1422.

The Fourteenth Amendment of the Constitution of the United States provides, among other things: "nor shall any state deprive any person of life, liberty, or property, without the due process of law . . . ." "When applied to substantive rights it is interpreted to mean that the government is without right to deprive a person of life, liberty, or property by an act that has no reasonable relation to any proper governmental purpose, or which is so far beyond the necessity of the case to be an arbitrary exercise

of governmental power." *B. F. Williams v. City of Richmond*, 177 Va. 477, 478, 14 S.E.2d 287, citing 16 C.J.S., *Constitutional Law*, § 567.

The boundaries of permissible action by public bodies are set by the law. *First Va. Bank — Colonial v. Baker*, 225 Va. 72, 79, 301 S.E.2d 8 (1983). The public has a right to expect that their officials will not act arbitrarily and that they will comply with the law. Taking office by popular election does not raise an individual above the law. For example, systematic discrimination by public officials based on race or religion is prohibited, and the manner in which public bodies may enter contracts is rigidly controlled by statutory law. *See, e.g.*, Virginia Code § 11-35 *et seq.* (Virginia Public Procurement Act) and § 2.1-639.5 (prohibited conduct by state and local officials regarding contracts). Moreover, as a member of a public governing body, the public official may not use his public office to further his private interests. *Bristol v. Dominion Nat'l Bank*, 153 Va. 71, 79, 149 S.E. 632 (1929).

At several junctures during their argument, the Defendants have referred to the objections raised by some landowners at the February 10, 1986, public hearing and said that was a consideration in their decision to refuse to grant the Plaintiffs' sewer permit. If this were true, it further supports the arbitrary nature of their decision. *See West v. Mills*, 238 Va. 162, 168, 380 S.E.2d 917 (1989). The public hearing was to consider the financing of the line, not whether it should be built. It was not within the legislative purview of the Town Council to decide whether to build the line, because that has already been decided by the Annexation Decree, which the Town accepted and did not appeal. The issuance of a public permit by a municipality is not a matter of popular plebescite, by which the favorite son may get a permit, but the stranger may not.

As officers of the town, town councilmen have public responsibilities, which, although they may be in conflict which their personal views, must be heeded, and an intentional refusal to perform a mandatory public duty may result in civil liability. In this case, the town council appears to have acted with intentional disregard of their municipal responsibilities with respect to the construction of the sewer line to the Plaintiffs' property, and in their refusal of the Plaintiffs' application for sewer service. The whimsical and parochial nature of the Town's actions is dramatically illustrated by the fact that seven months after they refused to grant the Plaintiffs' application for sewer service in the annexed area, the Town Council approved Mayor Marlow's application for sewer service in the annexed area.

Even Shakespeare's Julius Caesar saw the wrong in such governmental favoritism:

> *Artemidorus*: O Caesar, read mine first; for mine's a suit That touches Caesar nearer. Read it, great Caesar.

> *Caesar*: What touches us ourself shall be last served.

W. Shakespeare, *Julius Caesar*, Act III, Scene 1.

Where a citizen satisfies the requirements for a public entitlement, public officials have but one choice under the law and that is to grant the entitlement which is sought, whether it be a business license, a building permit, or a sewer service application under the facts of this case. In this case not only was the language of the 1976 Annexation Decree couched in crystalline clear language, the Court provided a picture. Exhibit 13 to the Annexation Decree shows the location of the sewer lines to be constructed in the annexed area in bright orange red lines. The Town Attorney advised the town within two days of receipt of the application that the Town had a duty to provide the sewer service. Plaintiff's Exhibit 4. Despite the clear language of the annexation decree, despite the bright red lines showing the path of the sewer to the Plaintiffs' property shown on Exhibit 13, despite having been given five years to comply with the Annexation Decree, and despite the advice of the town attorney, the town council decided to refuse to provide the sewer service, and, in so doing it departed from the path of permissible and legally protected municipal action. The Town's unreasonable departure from the clearly prescribed path of the law as set forth in the Annexation Decree, which culminated in the Town's refusing to grant the Plaintiffs' application for sewer service, is the archetypal, arbitrary action which is actionable under 42 U.S.C. § 1983.

## 7. *No Post-Deprivation State Remedy*

The Town's action in this case did not amount to a taking. In *Virginia Land Investment Association v. City of Va. Beach*, 239 Va. 412, 420-421, 389 S.E.2d 312 (1990), the Supreme Court of Virginia held that:

> An unconstitutional taking or damage did not occur in this case because the owner was not deprived of the use or right to sell the land. Diminution in salability or potential market value does not rise to the level of a constitutional taking or damage to the property.

*Accord Scott v. Greenville County,* 716 F.2d 1409, 1421-1422 (4th Cir. 1983). The Plaintiffs were not denied the use of their land or right to sell it. In fact, the Plaintiffs purchased their land in 1964, so clearly their land had value and was salable without sewer service. The gravamen of Plaintiffs' claim is that they were denied the enhancement in market value to be derived from the availability of public sewer service to each of the Petitioner's lots. No inverse condemnation action will lie in Virginia where the acts complained of are to confer a benefit upon the property, because where enhancement exceeds the damage to the property, there can be no award for damages to the Petitioner's property in a condemnation action. *See, e.g., State Hwy. & Transp. Commr. v. Linsly,* 223 Va. 437, 444, 290 S.E.2d 834 (1982).

There is no state remedy for the damages which the Plaintiffs' may have sustained as a result of the Town's wrongful acts. The fact that "there is no other available specific and adequate remedy" was one of the grounds upon which the Supreme Court affirmed this Court's decision in issuing the writ of mandamus in the companion *Industrial Park* Case. *See Front Royal v. Front Royal and Warren County Ind. Park Corp.,* 248 Va. 581, 584, 449 S.E.2d 794 (1994).

## 8. *Equal Protection*

As noted in 16A Am. Jur. 2d, *Constitutional Law,* § 817 (equal protection under the Fifth Amendment), the constitutional guaranty to substantive due process and equal protection is breached where public officials create a:

> classification that is not based on some real and substantial distinction, bearing a reasonable and just relation to the things in respect to the classification imposed. Due process of law is denied when any particular person or class is singled out for the imposition of restraint or burdens not imposed upon . . . all of the class or of the community at large . . . .

"[A] classification must be based upon some reasonable ground, some difference which bears a just and proper relation to the attempted classification." 16A Am. Jur. 2d, *Constitutional Law,* § 755 (equal protection under the Fourteenth Amendment). While there are some substantive differences between the equal protection under the Fifth and Fourteenth Amendments, *see generally* 16A Am. Jur. 2d, *Constitutional Law,* §§ 740 and 741, the analysis applied to the reasonability of the governmental

action in creating the classification under scrutiny is the same, where no suspect class is concerned. *Adarand Constructors, Inc. v. Pena*, 515 U.S. —, 132 L. Ed. 2d 158, 165, 115 S. Ct. — (1995); *see generally* 16A Am. Jur. 2d, *Constitutional Law*, §§ 753-756.

The record before this Court shows without contradiction:

1. The McLaughlins had the right to have the sewer line installed by the defendants, the right being established under state law by the mandate of the 1976 Annexation Decree.

2. The mandate of the 1976 Annexation Court Decree removed any discretion on the part of the defendants with respect to compliance with the decree.

3. The defendants willfully refused to comply with the mandate of the 1976 Annexation Court Decree.

4. In order to try to justify their actions, the defendants placed the complainants' property in a class not permitted by law, the 1976 Annexation Court's Decree, and around the same time extended sewer lines to serve properties that fell within the same classification.

5. The wrongful refusal of the defendants to comply with the Annexation Court Decree, deprived the McLaughlins of sewer lines to serve their property until a line was constructed by third parties to which the Town made a connection available.

The U.S. District Court, Western Division of Virginia, in granting the complainants motion for summary judgment on the issue of denial of equal protection stated:

> This court can construct no possible rationale for defendants' refusal, in the face of a clear court order, to extend the sewer line except for reasons which "constitute[ ] the very sort of parochial discrimination that the Equal Protection Clause was intended to prevent," [citing] *Metropolitan Life Insurance Co. v. Ward*, 470 U.S. 869, 878, 105 S. Ct. 1676, 1681, 84 L. Ed. 2d 751 (1985).
>
> Yet, in this case, it is clear to the court that the defendants were under such a strictly constructed judicial mandate that the interests to which a rational relationship might ordinarily refer are simply inaccessible to instant defendants, therefore, this Court grants plaintiffs' motion for summary judgment on the basis of a violation of their right to equal protection of the laws and, likewise, denies defendants' motion for summary judgment on this point.

*Front Royal & Warren County Ind. Park v. Town of Front Royal,* 708 F. Supp. 1477, 1487 (W.D. Va. 1989) (final judgment vacated by U.S. District Court on grounds of abstention).

Under both federal and state law, it is clear that on the record before this Court the Complainants are entitled to a partial summary judgment holding that the defendants have deprived them of equal protection of law and of property without due process of law guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States. 42 U.S.C. § 1983 provides the means for the McLaughlins to obtain redress for the damages incurred by them as a result of the violation of their constitutional rights.

### 9. *Conspiracy Count*

In Count IV of their Motion for Judgment, the Plaintiffs claim that the individual defendants conspired from February 10, 1986, until June 9, 1986, to refuse to provide sewer service to the Plaintiffs pursuant to Virginia Code §§ 18.2-499 and 18.2-500. During their oral argument, the Court asked Plaintiffs' counsel whether they had any evidence not set forth in their proposed findings of fact of any clandestine meetings of the Town Council or of any group of councilmen incident to their claim, which they had not set forth in their proposed findings of fact, and they said that they did not, but rather that the inferences to be drawn from these established facts established the illegal conspiracy. All of the named defendants were then members of the Town Council, and, if they were acting in their capacity as such, they cannot have formed a conspiracy since they were all agents of the Town. *See Fox v. Deese,* 234 Va. 412, 428, 362 S.E.2d 699 (1987); and *Scott v. Greenville County,* 716 F.2d 1409, 1424 (4th Cir. 1983).

The historical test in Virginia to determine whether an act is committed within the scope of employment is, as follows: (1) whether it was expressly or impliedly directed by the employer, or is naturally incident to the business; and (2) whether it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise completely from some external, independent, and personal motive on the part of the employee to do the act for his own account. *Smith v. Landmark Communications, Inc.,* 246 Va. 149, 151-52, 431 S.E.2d 306 (1993); *Kensington Associates v. West,* 234 Va. 430, 362 S.E.2d 900 (1987); *Manuel v. Cassada,* 190 Va.

906, 913-14, 59 S.E.2d 47 (1950); *Tri-State Coach Corp. v. Walsh*, 188 Va. 299, 307, 49 S.E.2d 363 (1948). *Johnson v. Shaffer*, 33 Va. Cir. 57, 70 (Warren County 1993). The very recent decision of the Supreme Court in *Commercial Business Systems, Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 453 S.E.2d 261 (1995), both implies that this test for vicarious liability for the unauthorized acts of an erring employee or agent may now be a broader test of whether the malefactor was performing his duties in his position with his employer at the time of the alleged malfeasance and illustrates the fact that extreme departures from the proper course of conduct may still remain within the purview of the official capacity of the person committing the wrong. The facts are not in dispute in this case, and there is no evidence of any act taken outside of the scope of the individual defendants' position as town officials insofar as the Town's action on the Plaintiffs' application for sewer service is concerned. The actions of defendant Marlow incident to his own application for sewer service all occurred after the Plaintiffs' application had been denied.

"When an employer-employee relationship has been established, 'the burden is on the . . . [individual challenging the employer-employee relationship] . . . to prove that the [employee] was not acting within the scope of his employment when he committed the act complained of, and . . . if the evidence leaves the question in doubt it becomes an issue to be determined by the jury'." *Kensington Associates v. West*, 234 Va. at 432-33, 362 S.E.2d 900 (1987) *quoting Broaddus v. Standard Drug Co.*, 211 Va. 645, 653-654, 179 S.E.2d 497 (1971). "Moreover, when the undisputed evidence shows that an employee's deviation from the employer's business is slight and not unusual, or on the other hand, great and unusual, the court shall determine, as a matter of law, whether the employee was acting within the scope of employment." *Kensington Assoc.* at 433, 362 S.E.2d 900.

In this case, Plaintiffs assert that the actions of all the individual defendants, though utilizing the powers of their offices, were in violation of the Virginia Freedom of Information Act and/or in violation of the 1976 Annexation Decree and, *therefore*, beyond their official capacities and scope of employment. (See Plaintiffs' Response to Defendants' First Request for Admissions, ¶¶ 1, 2; Plaintiffs' Response to Defendants' First Interrogatories, No. 4; Plaintiffs' Response to Defendants' Second Request for Admissions, ¶ 3; Plaintiffs' Response to Defendants' Second Interrogatories, No. 2.) In other words, Plaintiffs contend that, by virtue of certain conduct allegedly in violation of the Freedom of Information Act, and/or simply by

not complying with the ministerial duty imposed by the 1976 Annexation Decree, all individual defendants were acting outside the scope of their Town employment. As a matter of law, Plaintiffs' claim must fail on this argument.

The fact that a defendant's conduct may involve illegal activity is not dispositive of whether he was acting outside the scope of employment at the time of the conduct. It is not a *per se* proposition, as Plaintiffs suggest. *See Crowell v. Duncan*, 145 Va. 489, 134 S.E. 576 (1926) (despite reckless conduct by son of taxi owner, specifically, driving at illegal speed at time of accident, evidence justified finding that son was still in employ of father at time of accident).

The Virginia Supreme Court has addressed the conduct that should be the focus of testing whether an act was done within the scope of employment, as follows:

> The test of the liability of the principal for the tortious acts of his agent is not whether the tortious act itself is a transaction within the ordinary course of the business of the principal, or within the scope of the agent's authority, but whether the service itself in which the tortious act was done was within the ordinary course of such business or within the scope of such authority.

*United Brotherhood of Carpenters and Joiners of Am., AFL-CIO v. Humphreys*, 203 Va. 781, 786-87, 127 S.E.2d 98 (1963); *accord Wilkinson v. Gray*, 523 F. Supp. 372, 374 (E.D. Va. 1981).

In this case there can be no question that the service within which all of the alleged unlawful acts were done, the review and acting upon applications for municipal sewer service, was within the ordinary course of business for all of the individual Town officials or Council members. All of the actions to which Plaintiffs point as supporting their conspiracy count, that the individual defendants violated the Freedom of Information Act (by not conducting certain business meetings in public, by coming to certain agreements in work sessions, by allegedly making false statements as to what was considered in work sessions, and/or by not keeping certain purportedly required minutes), and/or that the individual defendants violated the law by refusing to perform the ministerial duty of carrying out the 1976 Annexation Decree, clearly occurred by virtue of the individual defendants' employment as Town officials and Council members and incident to Town business. (See Plaintiffs' Response to Defendants' Second

Request for Admissions, ¶ 3; Plaintiffs' Response to Defendants' Second Interrogatories, ¶ 2.)

There is no allegation, nor can Plaintiffs demonstrate any support for such, that any individual defendant was acting *wholly* from some external, independent, and personal motive to do any of the actions upon his own account, rather than incident to Town business, even if mistakenly, ill-advisedly, or unlawfully carried out. Because Plaintiffs cannot demonstrate that any of the alleged activities of the individual defendants were "wholly disconnected" from the business of the Town, they cannot demonstrate that the individual defendants were acting outside the scope of their employment. Thus, none of the individual defendants can be liable for conspiracy because each is deemed to be, in effect, an extension of the Town. *See Haigh v. Matsushita Elec. Corp.*, 676 F. Supp. 1332, 1349 (E.D. Va. 1987) (where essence of allegations is that individual defendants set into motion a scheme allegedly to further an illegal scheme of the employer, such activities are within the scope of employment).

### 10. *Freedom of Information Act*

With respect to all allegations that the individual defendants violated the Freedom of Information Act with respect to statements made, minutes, meeting requirements, or otherwise, the Virginia Freedom of Information Act creates the access and entry rights of citizens to the business of government and meetings of public bodies and creates the duties of local government officials to conduct official business in accordance with its requirements. The Virginia Freedom of Information Act has given citizens the right to complain about certain matters related to the conduct of local government and records related to official government business and provides the exclusive remedy for such complaints. *See School Board v. Giannoutsos*, 238 Va. 144, 147, 380 S.E.2d 647 (1989). On the facts of this case, the Plaintiffs have no damage claim under the Virginia Freedom of Information Act, nor would the fact that the Defendants may have violated the Act taken their actions outside the course and scope of their duties as town officials.

### 11. *Defendants are Liable*

The Defendants acting under color of state law deprived the Plaintiffs, citizens of the United States, of their substantive due process and equal protection rights secured by the Constitution of the United States, and the Defendants are potentially liable to the Complainants for redress by dam-

ages under 42 U.S.C. § 1983 and for reimbursement for counsel fees and costs under 42 U.S.C. § 1988.

## IV. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. Plaintiffs' Motion for Partial Summary Judgment is granted on their claim set forth in Count III of their Motion for Judgment that the Town denied the Plaintiffs' federal substantive due process and equal protection rights by refusing to approve the Plaintiffs' application for sewer service and extending the sewer lines to their property as ordered by the 1976 Annexation Decree.

2. Defendants' Motion for Summary Judgment on the liability issue is denied.

3. Defendants' Motion for Summary Judgment is granted as to:

a. The Plaintiffs' conspiracy claim; and

b. The Freedom of Information Act right of action.

4. Count IV of the Motion for Judgment is dismissed.

In view of the Court's granting of the Plaintiffs' motion for summary judgment, the parties will advise the Court within five days of receipt of a copy of this order as to whether they wish to try the damage issues on March 12, 1996, or whether they wish to release that trial date and reset the damage issue for trial at a later date.