## Richmond

### VIRGINIA ALCOHOLIC BEVERAGE CONTROL BOARD
### v. 1713 WILSON, INCORPORATED,
### T/A VILLAGE GRILL.

January 14, 1977.

Record No. 751450.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*William P. Bagwell, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for plaintiff in error.

*Murray H. Wright (McGuire, Woods & Battle,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

This is an appeal by the Virginia Alcoholic Beverage Control Board (Board) from a final order of the trial court which

reversed and set aside an earlier order of the Board suspending the beverage license of 1713 Wilson, Incorporated, trading as Village Grill (Village Grill or the licensee), for a period of thirty days.

In the proceedings before the Board, it was charged that the licensee, ". . . on October 16, 1974, between 11:30 p.m. and 12:45 a.m., next ensuing . . . allowed disorderly conduct upon the licensed premises in violation of Section 4-37(a)(1)(g) of the ABC Act.[1]" The Board, after reviewing the evidence adduced at a hearing before one of its Hearing Officers and that Hearing Officer's report and recommendation, and hearing the argument of licensee's counsel, was of the opinion that there was reasonable cause to believe the charge was substantiated by the evidence; whereupon, it entered the suspension order.

The licensee filed its petition for judicial review in the trial court under Code § 4-37(d). The effective statute when the petition was heard by the trial court[2], in pertinent part, provided:

"[T]hat upon the judicial review of a suspension such review or appeal shall be limited to the determination of errors of law or a capricious and arbitrary abuse of discretion. . . . The jurisdiction of the circuit court of the [C]ity of Richmond shall be limited in any case involving such petition to the record of the proceedings before the Board."

The trial court, as a matter of law, held after reviewing the record that the Board had no reasonable cause to believe that the licensee had violated Code § 4-37(a)(1)(g) so it reversed the order of the Board.

---

[1] The pertinent part of the ABC Act, Code § 4-37(a)(1)(g), provides:

"(a) *Grounds for suspension or revocation.* — The Board may suspend or revoke any licenses issued by it if it has reasonable cause to believe:

"(1) That the licensee . . .

\* \* \*

(g) Has allowed noisy, lewd, or disorderly conduct upon the licensed premises. . . ."

[2] This statute has since been amended. Acts 1976, cc. 696, 698, 702. Code § 4-37, 1976 Cum. Supp.

■ The Board's findings of fact, upon review before the trial court, were entitled to a presumption of correctness and were binding upon the trial court if supported by credible evidence. Here, upon appeal from the order of the trial court, we must also view the evidence in the light most favorable to sustaining the Board's action.

The charges against the licensee arose from two incidents which occurred between 11:30 p.m. on the night of October 16, 1974, and 12:45 a.m. the following morning. The first incident, at approximately 11:30 p.m., involved an altercation between G.A. Depalma, a customer, and G.P. Carrigan, president of the licensee. While the evidence about this incident is in sharp conflict, the testimony of Depalma that, upon slight provocation, he was assaulted by Carrigan was accepted by the Board.

The second incident occurred at approximately 12:45 a.m. when two police officers, H. A. Churchbourne and T. H. Hoffman, went to the licensed premises to arrest Carrigan on an assault and battery warrant obtained by Depalma. Officer Churchbourne testified that Carrigan was advised of the warrant and asked to step outside so that the warrant could be served without embarrassing Carrigan before his customers. The police officers and Carrigan retired to the sidewalk "just adjacent to the [front] door," and, while the officers were searching Carrigan as an incident to his arrest, Susan Ann Carrigan, the wife of G. P. Carrigan and a vice president of the licensee, came outside and, in a loud voice, told Churchbourne "to get [his] God damned hands off her husband." After being advised by the officers "at least three times to go back inside because of her behavior," Mrs. Carrigan stepped into the restaurant. In "no more than thirty seconds" Mrs. Carrigan was again outside and while "holding the door open so that her actions and her statements could be heard by those inside and outside the premises, stated in a loud voice that [the police] were all a bunch of bastards." Officer Hoffman corroborated Officer Churchbourne's evidence.

In his testimony about the second incident, Carrigan conceded his wife was upset and "screaming" but he said he could not "recall her cursing any of the police officers."

At oral argument, licensee's counsel conceded that Depalma's testimony, if believed by the Board, would have given the Board probable cause to believe that the first instance constituted

disorderly conduct under the ABC Act if that conduct had been observed by persons present in the Village Grill other than participants in the altercation. Counsel points to the testimony of Officer Churchbourne that he and Officer Hoffman first went to the Village Grill that evening shortly after 11:30 p.m. in response to a call that a fight was in progress. Upon arriving there the officers did not observe anyone fighting, so they made inquiry of Mrs. Carrigan, the bartender and several of the customers who were present. All of the persons interviewed stated that "they had no knowledge of a fight on the premises." This testimony, counsel argues, shows that the altercation between Depalma and Carrigan, which lasted only a few seconds, was not "witnessed by anyone other than the participants."

Assuming, without deciding, the validity of the licensee's argument that the incident did not amount to a violation unless observed by someone other than the participants in the fracas, Carrigan's own testimony shows that "the girl behind the bar" observed the occurrence. The other testimony discloses that this incident took place when the establishment was "half-full", with approximately "30 customers present". While this is a license revocation proceeding where the statute required only evidence sufficient to give the Board probable cause to believe that the licensee had permitted disorderly conduct on the premises, the evidence adduced that the altercation took place at a time and place where it could have been or was likely to be observed by others would have been sufficient to carry the much heavier burden, the burden of proof beyond a reasonable doubt, in a criminal case where "public place" was an important element of the offense. *Noblett* v. *Commonwealth*, 194 Va. 241, 245, 72 S.E.2d 241, 243 (1952); *Wicks* v. *Charlottesville*, 215 Va. 274, 275-76, 208 S.E.2d 752, 754 (1974).

Licensee's counsel also conceded at oral argument that Mrs. Carrigan's conduct, as shown by the evidence, would have been sufficient to support the Board in finding probable cause to believe disorderly conduct proscribed by Code § 4-37(a)(1)(g) had occurred if this incident had taken place within the licensed establishment. The record clearly shows that Mrs. Carrigan, while engaged in the disturbance, held the door of the establishment open so that her utterances could be heard by persons inside the premises. Looking again to the criminal law,

where the higher burden of proof beyond a reasonable doubt applies, we held in *Hackney* v. *Commonwealth*, 186 Va. 888, 891, 45 S.E.2d 241, 242 (1947), that one who puts in force an agency for the commission of a crime, accompanies that agency to the point where it becomes effectual. In that case we held that vile and abusive language uttered by the defendant who was on private property constituted disorderly conduct in a public place because those utterances could be and were likely to be heard in the public highway some 30 feet away. Here, where the evidence shows that the words uttered by Mrs. Carrigan could have been and were likely to be heard by persons within the licensed establishment, we hold that this gave the Board reasonable cause to believe that disorderly conduct under Code § 4-37(a)(1)(g) had occurred upon the licensed premises.

While not assigning cross-error, licensee's counsel argued in brief and at oral argument that the charge contained in the Board's notice commencing this proceeding did not comport with Due Process or the requirement of Code § 4-37(b) that the notice ". . . shall contain a statement in detail of the grounds or reasons for such proposed or contemplated action . . ." This same issue was raised by the licensee in the trial court. The court's ruling, unfavorable to the licensee, was not assigned by it as cross-error so we will not notice it now. Rule 5:27, former Rule 5:1 § 4.

For the reasons assigned, the judgment of the trial court is reversed and the case is remanded with directions to reinstate the Board's order of suspension.

*Reversed and remanded.*