WILLIAM B. WEST, JR., ET AL.

V.

ROBERT L. MILLS, ET AL.

Record No. 870626

TOWN OF BLACKSBURG

V.

ROBERT L. MILLS, ET AL.

Record No. 880171

June 9, 1989

Present: All the Justices

*William G. Broaddus (Daniel K. Slone; Richard B. Kaufman, Town Attorney; McGuire, Woods, Battle & Boothe*, on briefs), for appellants. (Record Nos. 870626 and 880171)
*William B. Poff (Daniel F. Layman, Jr.; Deborah A. Oehlschlaeger; Woods, Rogers & Hazlegrove*, on brief), for appellees. (Record Nos. 870626 and 880171)

Justice Whiting delivered the opinion of the Court.

In these two cases, the primary issues are whether: (1) a trial court properly rejected a planning commission's[1] stated reasons for disapproving a subdivision plat and concluded that the commission based its disapproval on citizen opposition expressed at commission hearings; and (2) mandamus lies to compel the commission to consider a revised plat during the pendency of an appeal of its rejection of a previously submitted plat of the same property.

The Town of Blacksburg (the town) adopted a cluster housing ordinance on January 8, 1985.[2] Its stated purpose was "to offer incentives and encouragement to developers in the form of reducing development cost by compacting development . . . in return for the developer's voluntary provision of common or private open spaces or public areas, [and] high quality design." Blacksburg, Va., Code § 2-88(a) (1981). Its goals, stated in § 2-88(b), were

the preservation of land used for . . . recreation, or aesthetic and environmental enrichment; promotion of efficient land . . . use and the enhancement of the public health, safety and welfare by encouraging intensive development in a manner planned to harmonize with natural and man-made surroundings and the promotion of quality development in a compact form.

Section 2-93 furnished the procedure for "review, approval or disapproval" of such developments. Section 2-94 required that the

---

[1] The members of the planning commission were: Frances Parsons, J.D. Oliver, Robert Litschert, Anne W. Holberton, Theresa Humphreyville, Georgia Anne Snyder-Falkinham, Weldon Kerns, Margie D. Carson, Joseph T. Jones, and Curtis W. Sumner. They and William B. West, Jr., Director of Planning for the town, are appellants in Record No. 870626.

[2] The ordinance has since been repealed.

planning staff, planning commission and town council, as appropriate, [3]shall review the application . . . with consideration given to [a number of factors, including]: (a) whether or not the proposed cluster development is in harmony with the goals, objectives and policies . . . of § 1-2 of this chapter;[4] (b) the impact of the proposed cluster development on adjacent property and uses; . . . [and] (e) whether or not the required open space is accessible, functional and usable . . . .

Section 6.1-5 provided that "[a]pproval of a cluster subdivision plat shall conform to the general approval procedures set out in this ordinance." Section 6.1-6(b) stated that "[u]nless otherwise expressly provided, the provisions of the Subdivision Ordinance, Blacksburg Town Code (1981) . . . shall nonetheless apply to cluster subdivisions."

Robert L. Mills, Thomas E. Heavener, and Ernestine Foresman (the developers) own approximately 17 acres of land in the town of Blacksburg. Their land is zoned for single-family dwellings, requiring at least 10,000 square feet for each lot. It adjoins the Blacksburg High School on one side, and developed and undeveloped land zoned for single-family residences on the remaining three sides.

On May 8, 1986, the developers filed a preliminary cluster housing subdivision plat and explanatory schedules (the plat) with William B. West, director of planning for the town, seeking approval of a subdivision of their property, to be known as Deer Run. Although West approved the plat as meeting the general requirements of the town's subdivision and zoning ordinances, the town planning commission disapproved it on August 5, 1986. By letter dated September 3, 1986, the commission advised the developers of its reasons for disapproval and described general modifications which would permit approval of the plat. The pertinent reasons for disapproval were: (1) that the location and nature of the proposed open space was not accessible, functional, or usable

---

[3] Any subdivision of more than five lots required planning commission approval. Blacksburg, Va., Code § 6-3 (1981).

[4] Section 1-2 incorporated the legislative purposes of zoning as reflected in Code § 15.1-427, and further indicated an intent to "provide for adequate light, air, [and] convenience of access," and "to facilitate the creation of a convenient, attractive and harmonious community," as well as "to protect against overcrowding of land; undue density of population in relation to community facilities existing or available."

and should be redesigned; and (2) that the plat "simply presented a conventional subdivision with smaller lots [with] no attempt to 'cluster' or group the lots in one part of the parcel with the goal of lessening the impact of the higher densities which this plat would render possible."

On October 24, 1986, the developers submitted a second plat in which the number of lots was reduced, and their size was increased from an average of 5,500 to 6,200 square feet. Also, additional access was provided to the open space, and additional open space was provided around the edges of the property. The developers did not, however, group or cluster the houses as the commission suggested.

A public hearing was held on the second plat on December 2, 1986. After hearing statements in support of the application from one of the developers, their attorney, and one citizen who resided in the area, as well as statements in opposition from four nearby residents and an attorney representing the adjoining homeowners, three members of the commission supported the application, two abstained because of conflicts of interest, and five voted to disapprove.

At the hearing, four of the five-member majority said that the amended plat did not differ materially from the first plat and failed to address the first two objections the commission had noted. One of those members also noted a detrimental effect on the adjacent residential neighborhood, and the fifth member said that the project did not meet the high standards of the ordinance.

In a subsequent work session on December 16, 1986, two commission members who voted to deny the application made reference to possible adverse social and economic effects upon the neighborhood, should the subdivision plat be approved, and some members discussed the possibility of fixing minimum sale prices to protect the subdivision's quality. Another member opposing approval of the plat said that the feeling of the neighborhood was "the most important thing." Other members repeated their prior statements that the second plat was not substantially different from the first and failed to address the first two of the commission's previously expressed concerns. Several members made suggestions as to how the developers might improve the cluster pattern, as well as provide access to the open area.

At the end of the meeting, West agreed to draft a letter to the developers reflecting the reasons for disapproval and containing

suggestions as to how the plat might be amended in order to secure approval. West's draft was approved by the commission members, and West's letter, dated December 29, 1986, was sent to the developers. It advised that the commission continued to find: (1) the location and nature of the proposed open space was not accessible, functional, or usable; and (2) the revised plat presented only a conventional subdivision of lots smaller than that allowed by the non-cluster subdivision ordinance and the developers' attempt to cluster or group the lots so as to lessen the impact of the higher densities was unsatisfactory. The commission also made suggestions as to how the developers could overcome these deficiencies.

The developers appealed the planning commission's ruling to the town council. On January 27, 1987, the council declined to overrule the planning commission. On February 11, 1987, the developers filed a third plat and attachments (the third plat), which adopted one of the commission's clustering suggestions. On February 26, 1987, before the commission could act upon the third plat, the developers appealed the council's disapproval of the second plat to the Circuit Court.

When the planning commission met on March 3, 1987, it refused to consider the third plat because of the finality of the council's disapproval of the second plat. Two days later, the developers filed a petition for a writ of mandamus to compel the planning commission to consider the third plat. On April 21, 1987, after hearing evidence, the trial court granted the writ and required the planning commission to consider the third plat. We granted an appeal of this ruling to West and the commission.

On October 28, 1987, the trial court heard evidence and argument regarding disapproval of the second plat, and concluded that "the members of this Commission evidently were intimidated by these people who spoke in opposition . . . . I know exactly why these plans were not approved, pressure from people who owned some homes around close or in the neighborhood." Accordingly, the court found that the disapproval was not properly based on the applicable ordinance, was arbitrary and capricious, and ordered that the second plat be approved. We granted an appeal to the town. Both cases are before us in this proceeding which, by agreement, we consolidated for briefing and argument.

*Appeal of Disapproval of the Second Plat* (Record No. 880171)

Code § 15.1-475 limits the trial court's review to a determination whether the town's disapproval of the second plat was "not properly based on the ordinance applicable thereto, or was arbitrary or capricious." Each party correctly contends that we must accord presumptions of correctness to the respective findings of fact in their favor. *See A.B.C. Board* v. *Village Grill*, 217 Va. 632, 634, 231 S.E.2d 327, 328 (1977) (factual findings of administrative body); *cf. Fairfax County* v. *Pyles*, 224 Va. 629, 638, 300 S.E.2d 79, 84 (1983) (factual findings of court reviewing legislative decision). In each review, however, we examine the record to determine whether the evidence sustains the court's findings of fact, *see Pyles*, 224 Va. at 638, 300 S.E.2d at 84, and those of the administrative body, *see State Bd. of Health* v. *Godfrey*, 223 Va. 423, 435-36, 290 S.E.2d 875, 881-82 (1982); *Village Grill*, 217 Va. 632, 231 S.E.2d 327.

In this case we do not review conflicting findings based on the same evidence. The trial court concluded that the commission based its findings upon citizen pressure. On the other hand, the commission's stated findings were based upon what appeared to be valid grounds for disapproving the second plat.

First, we examine the record to ascertain if the evidence sustains the trial court's determination that the commission's action was "not properly based on the ordinance applicable thereto [and] was arbitrary and capricious" in that citizen pressure dictated the plat's disapproval. We keep in mind that the members of the planning commission are presumed to have acted correctly. *See Village Grill*, 217 Va. at 634, 231 S.E.2d at 328. Although some of the citizens who attended the public hearings argued that the commission should decide the issue in conformity with the wishes of the adjoining property owners, only one commission member echoed that sentiment in the subsequent deliberations. Every other member expressed different views of what the commission should consider in deciding whether to approve the plats. Furthermore, the commission's findings, as expressed in West's letter of December 29, 1986, and agreed to by all its members, contain nothing to indicate that citizen pressure influenced the commission's decision. Thus, we conclude that the evidence is insufficient to support the trial court's finding that citizen pressure was the unstated reason for the commission's disapproval of the second plat.

Alternately, the developer urges that the trial court's decision was correct because, during general discussions, comments were made by some commission members indicating that the subdivision might be occupied by students, and consist of lower-priced housing, adversely affecting the adjoining properties, and another commission member suggested fixing minimum prices on the lots. Apart from the fact that none of those considerations was reflected in the commission's conclusions,[5] the trial court did not find that the denial was based on these considerations.

■ Next, the developers argue that the commission improperly considered zoning ordinance criteria in its first two objections to both plats. In our opinion, §§ 2-93, -94, and 6.1-5 of the cluster ordinance, quoted earlier, required the commission to consider whether the proposed open space would be "accessible, functional and usable," as well as the impact of the subdivision on "adjacent property and uses." Clearly, the commission's rejection of the second plat, because of problems of access, function, and use of open space and inadequate attempts to cluster the houses, was authorized by those sections.

■ Next, we examine the planning commission's findings of fact. In our opinion, the facts recited earlier indicate that there was substantial evidence supporting the planning commission's disapproval of the second plat on appropriate considerations set forth in the ordinance. Therefore, the commission's action was authorized by the ordinance and was not arbitrary or capricious. Accordingly, we will reverse the trial court's decision and enter final judgment sustaining the commission's rejection of the second plat.

*Issuance of Writ of Mandamus* (Record No. 870626)

The commission and West contend that the trial court erred in issuing the writ of mandamus, compelling them to consider the developers' third plat.

■ For two reasons, we think the trial court erred in issuing the writ of mandamus. First, the developers have elected their remedy in appealing disapproval of the second plat. We find that remedy inconsistent with the pursuit of approval of yet another plat of the same property, through a writ of mandamus. Although Code § 15.1-475 requires planning commission action within 60

---

[5] Indeed, after describing these discussions, one of the developers testified that "there was just considerable discussion, no consensus of opinion."

days after submission of any plat, the commission should not be required to consider a plat covering property which was the subject of an earlier disapproved plat, when that disapproval is on appeal, either to the council or the courts.

Second, requiring the planning commission to consider the third plat resulted in simultaneous consideration of inconsistent plats for development of the same property by an administrative body and a court. If, ultimately, both were approved, there could be confusion as to which plat was to be recorded. This is one of the reasons given for applying the doctrine of exhaustion of administrative remedies. "[I]f it were not for the exhaustion doctrine, parties could seek remedies in various forums, which would inevitably lead to judicial and administrative conflict and confusion." 5 J. Stein, G. Mitchell, and B. Mezines, *Administrative Law* § 49.01, pp. 49-7 to -8 (1988). We refused to permit simultaneous litigation in two Virginia courts having concurrent jurisdiction of the same subject matter in *Craig* v. *Hoge*, 95 Va. 275, 28 S.E. 317 (1897). Despite an objection that refusing to allow the second court acquiring jurisdiction to proceed would delay a resolution of the controversy, we said "[s]uch delay would have been far preferable to the pernicious results that must ensue from a conflict between co-ordinate courts having concurrent jurisdiction." *Id*. at 283-84, 28 S.E. at 320. Those same considerations exist in this case.

Thus, we find that the trial court erred in issuing a writ of mandamus, and will reverse this case and enter final judgment dismissing the writ.

Record No. 870626—*Reversed and final judgment.*
Record No. 880171—*Reversed and final judgment.*