COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


FEVER'S INC. t/a
 FEVER'S RESTAURANT & LOUNGE
                                            OPINION BY
v.  Record No. 1329-96-2        JUDGE JAMES W. BENTON, JR.
                                         FEBRUARY 18, 1997
VIRGINIA ALCOHOLIC BEVERAGE
 CONTROL BOARD


          FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
                    Richard S. Blanton, Judge

          A. Pierre Jackson for appellant.

          Louis E. Matthews, Jr., Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General; Michael K. Jackson, Senior Assistant
          Attorney General and Chief, on brief), for
          appellee.


     The Virginia Alcoholic Beverage Control Board revoked the

wine and beer and mixed beverage licenses held by Fever's, Inc.

trading as Fever's Restaurant and Lounge.  The Board found that

(1) cause existed to deny Fever's a license because Fever's was

"so located that violations of the ABC Act or laws of the

Commonwealth relating to peace and good order" resulted, see Code

§ 4.1-222(A)(2)(b); and (2) on July 31, 1994, Fever's "allowed

noisy or disorderly conduct" on its premises, in violation of

Code § 4.1-225(1)(h).  Upon a petition for review, the circuit

court judge found reasonable cause to believe that Fever's

allowed noisy or disorderly conduct on its premises on July 31,

1994, affirmed the Board's decision on that ground, and stated

that he "need not address the other issues raised in this

matter."  Fever's appeals from that decision and contends that the evidence was insufficient to support the revocations.  For the reasons that follow, we reverse the trial judge's ruling upholding the Board's decision concerning the July 31, 1994 incident and remand the case to the trial judge for consideration of the Board's other ground for revoking the licenses.

I.

The facts concerning the July 31, 1994 incident are essentially undisputed.  At the evidentiary hearing, William Harding, the sole stockholder of the licensee and operator of the business, testified that he had planned an outdoor music festival for July 31, 1994, on the three acres of property adjacent to and owned by his restaurant in Prince Edward County.  The event was planned to be "an outdoor festival . . . out on the ball field with several DJs with lots of barbecue, food and everything."

Harding always employed security personnel at the restaurant, including off-duty police officers.  Harding testified that on a normal night he would have at least two bartenders on duty, one doorman, "two floor wardens, and three to four security."  Because the festival was to be held outdoors on July 31, Harding had more security personnel on his premises than usual.

When it rained that evening, Harding moved the event inside his restaurant, which has a dance hall permit issued by the county.  To reduce the number of people inside the premises,

Harding raised the entry fee from $10 to $15.  The evidence regarding the number of patrons on the premises that night was disputed.  Special Agent L. E. Williams testified that after the incident, Harding told him that approximately 600 people were in Fever's that night.  Harding testified that his dance hall permit did not limit the number of patrons.  In August 1994, after the event, the sheriff told Harding that the county administration office said the proper capacity for his facility was approximately 266 people.

The evidence proved that at 2:00 a.m. a disc jockey played "Rough It Up," a song that inspired the crowd to engage in "slam dancing," a dance that involves people intentionally colliding with one another.  Harding testified that the disc jockeys had been warned not to play that song and that most disc jockeys knew not to play that song at a public dance establishment.  Harding testified that when the disc jockey played the song, he ordered his staff to turn the lights on and asked everyone to leave.  Harding had several employees in the parking lot who used flashlights to assist in directing the cars out of the parking lot.

Larry Womack, the doorman, testified that when the disc jockey played the song, "Rough It Up," patrons began to dance and shove each other.  When the bumping occurred, the security personnel turned on the lights and began to escort people from the building.  Roger Jackson, a deputy sheriff who routinely

stopped by the restaurant at closing time, also testified that he was inside the restaurant at 2:00 a.m. when the disc jockey played the song, "Rough It Up."  He said the patrons who were dancing began pushing each other.  As things began to get out of control, he called for assistance from the county sheriff and the town police.

Officer Earle Townsend testified that at approximately 2:45 a.m., he received a call that an officer at Fever's was seeking additional assistance.  When Townsend arrived, the music had been turned off but the disc jockey was still screaming into the microphone.  As the patrons were being escorted outside, some of the patrons began to fight outside the building.  Shortly after Townsend went outside to disburse the patrons, he heard gunshots on a neighboring property, the Sportsmen's Arena.  The shots were fired near the Arena, approximately one hundred yards away from Fever's on the road that leads from Fever's to the highway.  Townsend went to the location where the shots were fired, found the victims, and sent them to the hospital in rescue vehicles.  The police arrested one person at that location.

A police officer, Bobby Simmons, testified that he was employed by Fever's, as his second job, to act as a security guard on July 31, 1994.  Simmons initially worked outside, but after fights erupted inside the restaurant, Simmons was called inside.  Simmons also testified that after the fighting started, he began to move patrons out of the restaurant and heard

gunshots.   Womack testified that the shots were at the

Sportsmen's Arena.   Womack further testified that when the deputy

sheriffs went to the area of the Sportsmen's Arena, the sheriff's

department momentarily stopped the people leaving Fever's from

exiting onto the highway.   As a result, the traffic leaving

Fever's slowed.

Officer Townsend also testified that he was approached in

downtown Farmville at approximately 3:30 a.m. by a vehicle whose

occupants asked for directions to a hospital.   An occupant of the

vehicle had a gunshot wound.   Townsend led the people to the

hospital.   Friends of the victim followed them and engaged in

misconduct at the hospital.   One arrest was made at the hospital.

However, no testimony linked those people to the Fever's

incident.

Special Agent Williams testified that "[o]n July 31, 1994,

one person was stabbed, two people were shot and eight others

received medical assistance from three different hospitals."

Sheriff Southall stated that the people involved in the

misconduct had been patrons at Fever's.

Other evidence in the record, unrelated to the events of

July 31, 1994, proved that instances of misconduct had occurred

at Fever's in the past.   Because the testimony was disputed and

the trial judge did not rely upon those incidents in rendering

his decision, we do not address that evidence.

II.

"Under Code § 9-6.14:17, the scope of review is limited to whether there was 'substantial evidence in the agency record' to support the decision. . . . The court may reject the agency's findings of fact 'only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion.'" Atkinson v. Virginia Alcoholic Beverage Control Comm'n, 1 Va. App. 172, 176, 336 S.E.2d 527, 529-30 (1985) (citations omitted). Contrary to the Board's finding, we conclude that the record lacks substantial evidence to support the finding that Harding, the owner and manager of Fever's, "allowed noisy, lewd or disorderly conduct upon the licensed premises" on July 31, 1994. "We recognize that the substantial evidence standard accords great deference to the findings of the administrative agency, but even under this standard the evidence must be relevant to the conclusion reached." Id. at 178, 336 S.E.2d at 531.

The evidence proved that Harding had a history of cooperating with the police, that he employed many security personnel at his restaurant on a regular basis, and that he took additional precautions on July 31, 1994. Harding specifically employed additional security personnel because the event was scheduled to be outdoors. When it rained, Harding moved the event inside the restaurant and raised the entrance fee in order to control the size of the crowd.

The evidence further proved that the disc jockeys were

warned in advance not to play the song that caused the disruptive conduct. In addition, the evidence proved that as soon as the disc jockey played the song and patrons became disorderly, Harding and his staff took immediate action to regain control. They turned the lights on and began asking the patrons to leave. Indeed, the Board adopted the hearing officer's finding that "management acted to stop the record and close the establishment."

In A.B.C. Board v. Village Grill, 217 Va. 632, 231 S.E.2d 327 (1977), the Supreme Court held that the licensee "allowed" misconduct to occur on the premises where the president of the licensee assaulted a customer and the vice president of the licensee directed abusive language toward police officers. See id. at 634, 231 S.E.2d at 328–29. No evidence proved that Harding or any of the employees of Fever's engaged in misconduct on July 31, 1994. In addition, no evidence proved that Harding simply watched as the situation deteriorated. Rather, the record proved that Harding took reasonable precautions to prepare for his event and reacted promptly and reasonably after the crowd became disruptive.

The Board made no findings that suggest additional precautions that Harding could have taken. The trial judge found that "the establishment had approximately 600 people there off and on throughout the evening." The record established, however, that the dance hall permit issued to Fever's did not contain a

capacity limitation and that Harding was not informed that the county had established a capacity for the restaurant until after July 1994.  Furthermore, the evidence is undisputed that the unexpected playing of music for slam dancing by a disc jockey was the precipitating event.  Based on this record, we hold that "'a reasonable mind would necessarily'" conclude that Harding did not "allow" the misconduct to occur at Fever's on July 31, 1994. Atkinson, 1 Va. App. at 176, 336 S.E.2d at 530 (citation omitted).  Harding took reasonable action to prevent the incident and to stop the disorder when it occurred.

## III.

The Board also found that the evidence supported a finding that "the place occupied by the licensee is so located that violations of the ABC Act or the laws of the Commonwealth relating to peace and good order have resulted from issuance of the license."  The trial judge, however, failed to review that finding by the Board because he found sufficient evidence to support the finding that Harding allowed misconduct to occur at Fever's on July 31, 1994.  Because we hold that ruling to be erroneous, we remand this case to the trial judge for a ruling on the Board's other ground for revoking the licenses.  On remand, the trial judge must determine whether substantial evidence in the agency record proves: (1) "that violations of the . . . Act or other laws of the Commonwealth relating to peace and good order have taken place at [Fever's]," and (2) "that there is some

- 8 -

nexus between these violations and the location of [Fever's]."

<u>Atkinson</u>, 1 Va. App. at 177, 336 S.E.2d at 530.

<u>Reversed and remanded</u>.