# CIRCUIT COURT OF THE CITY OF RICHMOND

Vencor, Inc.

v.

Virginia Dept. of
Medical Assistance Services

October 2, 1997

Case No. HI-180-3

BY JUDGE T. J. MARKOW

This opinion concerns the Petition for Appeal by Vencor, Inc., of the Virginia Department of Medical Assistance Services (DMAS) Director's Decision in Case No. 760CH97100180-00. In a Final Agency Decision, DMAS disallowed reimbursement for certain lease expenses related to Vencor's operation of Montvue Nursing Home. For the reasons discussed below, the DMAS Director's decision is affirmed.

Vencor is the corporate successor of Hillhaven Corporation, which has leased and operated the Montvue Nursing Home in Luray, Virginia, since September 1, 1985. Montvue is owned by Jeffrey and Theodore Chamberlain, who operated the facility as Page Nursing Home and Excelsior Care Centers, Inc., prior to that date. Hillhaven/Vencor and the Chamberlains are unrelated parties.

DMAS administers the Virginia Medicaid program. This responsibility includes reimbursing health care providers for certain program participation

costs. The Final Agency Decision in the instant case was issued on December 9, 1996, by Joseph M. Teefey, the Director of DMAS.

Since leasing the Montvue facility in 1985, Hillhaven/Vencor has participated in the Virginia Medicaid program pursuant to a written agreement with the DMAS Director. Va. Code § 32.1-325(C). The reimbursement of operation costs is determined under the DMAS Nursing Home Payment System (NHPS) regulations. As a program participant, Hillhaven/Vencor is required to submit a comprehensive annual cost report to DMAS in order to obtain reimbursement of certain facility operating costs, including lease costs. 1990 NHPS, Art. 5, § 2.20.[1] DMAS audits these costs reports and may disallow reimbursements based on this review. *Id.* at Art. 9, § 2.31. These desk audits are intended to verify the completeness and accuracy of the cost reports and their consistency with the NHPS regulations. If the nursing home provider disagrees with the adjustment, it may appeal these findings pursuant to Va. Code §§ 9-6.14:1 through 9-6.14:25 ("Administrative Process Act"). 1990 NHPS, Pt. III, §§ 3.1 to 3.5.

The current dispute centers on the NHPS distinctions between historical cost of ownership, allowable cost of ownership, and actual lease cost. Upon filing its first cost report in August 1986, Hillhaven/Vencor claimed reimbursement for the entire amount of its actual lease costs on the nursing home. DMAS audited the report and disallowed reimbursement for a portion of these actual lease costs, settling on a figure less than the claimed lease cost. Hillhaven/Vencor once again requested reimbursement of its actual lease costs in 1987. Following an audit of this cost report, DMAS disallowed a portion of these lease costs as well. The Department's reimbursement disallowances were based upon an estimated historical ownership cost of $522,804, which was established following a July 1985 DMAS field audit of the 1982 Montvue cost report. Coincident to the dispute between DMAS and Hillhaven/Vencor, the owners of Montvue (the Chamberlains) appealed the Department's historical cost figure.

In order to resolve this dispute, Hillhaven/Vencor met with DMAS' auditors in mid-1987. DMAS representatives informed Hillhaven/Vencor that its best estimate of the maximum allowable lease cost (based on "historical cost of ownership") for Montvue was $522,804, and advised the facility that any excess amount submitted in future cost reports would not be reimbursed. Following this informal meeting between DMAS and Hillhaven/Vencor, the

---

[1] The 1986 version of the NHPS governs cost year 1990. The 1990 version of the NHPS governs cost years 1991 to the present. As the amended language does not affect the issues of this case, citations are provided to the 1990 version only (unless otherwise indicated).

lessee appealed its cost reports for the years 1985 through 1987. However, both the owners and lessees of Montvue withdrew their DMAS appeals in 1989.

Based on the "historical" cost calculation supplied by DMAS in 1987, Hillhaven/Vencor claimed reimbursement based on the $522,804 figure as its "allowable" cost of ownership on all cost reports subsequent to May 31, 1987. This reimbursement request was substantially less than its actual lease costs. In 1992, DMAS auditors noticed that Hillhaven/Vencor had been submitting identical reimbursement requests in the amount of $522,804 for several years, despite the fact that the amount should have been decreasing in accordance with the NHPS definition of historical costs. Audits were conducted and DMAS issued revised settlements and Notices of Program Reimbursement. Pursuant to Va. Code § 9-6.14:11, DMAS conducted an Informal Fact Finding Conference (IFFC) on October 3, 1994, and disallowed the requested reimbursement rate on Hillhaven/Vencor's lease costs for the fiscal years ending May 30, 1990, May 31, 1991, and May 31, 1992, and interim 1993. DMAS limited its challenges to this time frame because cost reports are only subject to audit for a period of three years. 1990 NHPS, Art. 9, § 2.37(A). At the time of the disallowances, DMAS stated that its adjustments were founded on an analysis of Hillhaven/Vencor's submissions and DMAS records, including its July 1985 field audit of Montvue.

DMAS contends that, at the time of the 1987 meeting, the $522,804 figure was merely an estimate based upon incomplete information supplied by the owner Hillhaven/Vencor. Hillhaven/Vencor counters that this figure was a settled fact derived from the 1985 audit of the facility and memorialized in a letter between the parties. DMAS replies that the historical cost dispute was resolved in 1989, when the owners and lessees dropped their appeals. The resolution of that issue is not determinative to the instant case, however. The central dispute here is over the ability of DMAS to revise annual allowable cost reimbursements. The "allowable cost of ownership" remained open to DMAS scrutiny for three years beyond the date that a cost report was submitted. The only cost reports challenged by DMAS were for the years 1990, 1991, 1992, and interim 1993. Each of these periods is subsequent to 1989, the point at which DMAS claims that the historical cost of ownership was finally settled. Even if this figure was established as early as 1985, as Hillhaven/Vencor alleges, this does not preclude appellee's audit power for the years at issue.

Hillhaven/Vencor appealed the IFFC decision on lease cost reimbursement and requested a formal hearing. This hearing was conducted on September 21, 1995, in accordance with the Virginia Administrative Process Act. On March

26, 1996, the Administrative Hearing Officer, James C. Breeden, prepared Findings of Fact and Conclusions of Law pursuant to Va. Code § 9-6.14:12 and submitted these to the DMAS Director for a Final Agency Decision. Mr. Breeden concluded that Hillhaven/Vencor should be reimbursed for the full amount of claimed lease costs ($522,804). On December 9, 1996, DMAS Director Joseph M. Teefey rejected the Hearing Officer's recommended decision and affirmed the IFFC decision.

The allowable lease costs for nursing home facilities is determined pursuant to Appendix II of the NHPS regulations. First, the allowable cost of ownership is compared to the total expenses over the life of the lease in order to create a rate schedule. 1990 NHPS, App. II, § 1.1(E)(1). The allowable cost of ownership is calculated by evaluating depreciation, interest expenses, taxes, insurance, legal and commitment fees, and return on equity. *Id.* § 1.3(B). This comparative schedule must be completed before any rate determination for allowable lease costs is made. *Id.* § 1.3(A). This schedule shall be submitted with each cost report. *See id.* § 1.1(E)(4).

Next, the DMAS regulations state that the allowable cost of ownership is "determined by" the historical cost of *owning* the facility as of the date that the *lease* becomes effective. 1990 NHPS, App. II, § 1.1(C). Further, "[r]eimbursement of lease costs pursuant to a lease ... shall be *limited* to the DMAS allowable cost of ownership." *Id.* § 1.1(E). Allowable costs "are only those allowable, reasonable costs which are acceptable under the Medicare principles of reimbursement ... ." *Id.* at Art. 3, § 2.9.

The phrase "determined by" should be construed as meaning "limited by," such that the *historical* cost of ownership is a ceiling on the *allowable* cost of ownership. This interpretation of the lease provisions is clarified by referring to the 1986 version of NHPS:

> The word "historical" will apply to depreciation when an on-going facility is leased by the current owner without the act of a bona fide sale taking place ... . The lease of a nursing home *will not exceed* the equivalent of the total annualized cost of depreciation, interest, insurance, taxes, equity and legal fees, as would have been allowable to the seller ... .

1986 NHPS, App. II, § 1.1(A) & (G)(3) (emphasis added). In sum, the *allowable* lease cost, which is computed annually by DMAS in accordance with cost reports, might be equal to, but cannot exceed, the *historical* figure fixed at the beginning of the lease. Further, reimbursement for leasing expense is capped at either allowable cost or actual lease cost, whichever is smaller.

In the instant case, the "historical" cost of ownership as of the date the lease became effective (September 1, 1985) was set by DMAS at $522,804. However, the "allowable" cost of ownership for the years in dispute was found to be *less* than both this historical amount and the actual lease cost. This is explained by reference to 1990 NHPS, App. II, § 1.3(B). For example, while "allowable" cost reimbursement for straight line depreciation will remain constant over the life of the lease, this amount must decrease annually based upon the actual interest expense incurred by the facility's owners in servicing long-term debt. As the term of the mortgage proceeds, the amount of principle retired will increase while the amount of interest paid declines. In addition, the cost of insurance and taxes will vary from year to year. This combination resulted in a proportionate decrease in reimbursement of Hillhaven/Vencor's payments over the term of the lease.

When reviewing an administrative decision, the complainant bears the burden of designating and demonstrating any errors of law committed by the agency. Va. Code § 9-6.14:17. When the appeal is based on the agency record, this court's duty with respect to issues of fact is limited to determining whether there was substantial evidence in the record to support the agency's findings. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Virginia Real Estate Commission v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983). A lack of substantial evidence to support factual findings is grounds for reversal. *Fever's, Inc. v. Virginia Alcoholic Beverage Control Bd.*, 24 Va. App. 213, 218, 481 S.E.2d 527, 529-30 (1985), quoting *Atkinson v. Virginia Alcoholic Beverage Control Comm'n*, 1 Va. App. 172, 176, 336 S.E.2d 527, 529-30 (1985). When reviewing factual issues based upon the agency record, "the court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Va. Code § 9-6.14:17.

The court finds that there is substantial evidence in the record to support the DMAS Director's conclusions. There is a poorly illuminated[2] but extremely important distinction between "historical" cost and "allowable" cost in the context of nursing home leasing reimbursement. Appellee correctly found that disallowance of certain leasing expense reimbursements was appropriate and permissible under the circumstances. The Department was obligated to carry out its annual audit responsibilities and to compare the

---

[2] The court was both dismayed and disturbed by the poor draftsmanship demonstrated in the NHPS regulations and remains concerned about the difficulties faced by nursing care providers attempting to comply with this unintelligible scheme.

requested reimbursement amount to historical data and allowable cost. Hillhaven/Vencor has no vested right in the $522,804 cost figure revealed by DMAS representatives in the 1987 meeting. This figure was merely an absolute ceiling on reimbursement and a key ingredient in the rate schedule utilized by DMAS in its annual evaluation of cost reports. It was not a license for appellee to disregard its disclosure responsibilities pursuant to the NHPS.

In conclusion, the court affirms the DMAS decision.