Present:  All the Justices

HANOVER COUNTY
                          OPINION BY JUSTICE CYNTHIA D. KINSER
v.  Record No. 972283              September 18, 1998

A.G. BERTOZZI

                FROM THE CIRCUIT COURT OF HANOVER COUNTY
                       Richard H.C. Taylor, Judge


     Hanover County (the County) seeks reversal of the circuit

court's judgment ordering the County to review A.G. Bertozzi's

(Bertozzi) plats for Sections A through G of his proposed

subdivision titled Sugar Maple under the terms of zoning and

subdivision ordinances in effect prior to October 9, 1996.

Because Bertozzi failed to submit complete applications and plats

for Sections F and G before an October 9, 1996 deadline, we will

reverse the circuit court's judgment with respect to those two

sections.  As to Sections A through E, we will reverse the trial

court's judgment and remand the case because the record is devoid

of any evidence concerning whether the County's disapproval of

Bertozzi's applications and plats for those sections was based on

the applicable ordinance, or was arbitrary or capricious.

                                I.

     On October 9, 1996, the Hanover County Board of Supervisors

(the Board) adopted zoning and subdivision Ordinance Nos. 96-17

and 96-18, which significantly changed the rural subdivision

requirements for the County.  However, the revised ordinances

contained a "grandfather clause" that permitted "[c]omplete applications for final subdivision approval which have been filed before the close of business on October 9, 1996, which were in compliance with all substantive zoning and subdivision ordinance requirements in effect on that date [to] be reviewed in accordance with those requirements."

In a letter dated May 7, 1996, Bertozzi's agent informed the Hanover County Planning Office (the Planning Office) that Bertozzi was interested in developing a subdivision on 181 acres of real estate that he owned in the County.  Bertozzi sent the Planning Office three drawings that showed the existing division of the land for tax purposes and two tentative subdivision layouts.

Subsequently, on October 9, 1996, Bertozzi recorded a plat subdividing his property into seven tracts labeled Sections A through G.  Each section contained slightly more than 25 acres. That same day, Bertozzi filed applications with the Planning Office for final approval of "SECTION 'A' through SECTION 'E'" of Sugar Maple subdivision.  Along with the application for each 23-acre section of the subdivision, Bertozzi submitted a plat showing the division of the section into four lots.  On each plat one lot was labeled the "First Division" and contained approximately two acres.  The remaining 23 acres were subdivided into three lots, one consisting of approximately two acres and the remaining two containing approximately ten acres each.  However, the letter to

2

the Planning Office that accompanied the applications stated that the "[f]iling for review of Sections 'F' and 'G' will be forthcoming." Thus, Bertozzi did not file applications or plats for final approval of Sections F and G before the close of business on October 9, 1996.[1]

The Board, by a letter dated October 29, 1996, notified Bertozzi that it disapproved his subdivision applications for Sections A through E of Sugar Maple "because of failure to record first division lots *(Title I. Art. 5. Sect. 2.7-1)*." The noted defect in Bertozzi's applications was based on an alleged administrative interpretation of the previous zoning and subdivision ordinances. This interpretation, referred to as the "twenty-five acre Rule" (the "Rule"), permitted developers to subdivide their land into more lots than would have been allowed under a strict interpretation of the previous ordinances. Allegedly, under the "Rule," a landowner, who recorded a plat subdividing a large parcel of land into 25-acre tracts, must next record, by deed or plat, a two-acre "First Division" lot in each of the 25-acre parcels. The landowner could then subdivide the remaining 23 acres into two ten-acre tracts and one three-acre

_____

[1] The applications and plats for Sections A through E bear a stamp showing receipt by the Planning Office on October 9, 1996. The applications and plats for Sections F and G contain no such receipt stamps. Bertozzi acknowledged in his brief to this Court that the plats for Sections F and G were not submitted to the Planning Office until October 10, 1996.

tract.[2]  According to the Board, Bertozzi did not comply with the "Rule" because he submitted his subdivision plats for Sections A through E before he recorded a deed or plat for the "First Division" lot in each of the 25-acre sections.

Bertozzi appealed the Board's disapproval to the circuit court and asserted that his applications and plats  fully complied with all the requirements of the County's zoning and subdivision ordinances in effect before the October 9, 1996 revisions and that the Board's disapproval was, therefore, both "improper" and "arbitrary and/or capricious."  After considering memoranda and argument by both parties, but without receiving any evidence, the court ruled in favor of Bertozzi.  In its decree dated July 30, 1997, the court directed that the "subdivision plats titled Sugar Maple, Sections A-G . . . be accepted and reviewed by the County pursuant to the requirements of ordinances in effect prior to October 9, 1996 . . . ."  The County appeals.

II.

_____

[2] The "Rule" was purportedly based on two provisions of the prior ordinances, specifically the definition of the term "subdivision" and the minimum lot size for a single-family dwelling.  "Subdivision" was defined as "[t]he division of a tract or parcel of land into three (3) or more parts, any of which contain an area of ten (10) or more acres, but less than twenty-five (25) acres . . . ."  Hanover County, Va., Code tit. III, § 2-6 (1972).  The minimum lot size for a single-family dwelling in the A-1 Agricultural District was "2 acres, after the first conveyance all lots must be 10 acres or greater."  Id. at tit. I, art. 5, § 2.7-1.

4

We will first address whether the circuit court erred in giving Bertozzi the benefit of the "grandfather clause" with regard to Sections F and G. Although Bertozzi did not submit the final plats for Sections F and G to the Planning Office before the close of business on October 9, 1996, he argues that his applications were, nevertheless, complete by that deadline. According to Bertozzi, he advised the County on October 9, 1996, that the plats for Sections F and G would be forthcoming and that they were, in fact, submitted the next day. He also argues that the County had notice of Sections F and G because he gave the County tentative drawings of the entire subdivision on May 7, 1996. We disagree.

"Where the language in an ordinance . . . is plain and unambiguous, it must be given that plain meaning or intent." Board of Supervisors of Fauquier County v. Machnick, 242 Va. 452, 456, 410 S.E.2d 607, 609 (1991). In order to have a subdivision plat reviewed under the terms of the County's prior ordinances, the plain and unambiguous language of the "grandfather clause" requires a landowner to have filed an application for final subdivision approval before the close of business on October 9, 1996. The application had to be complete and in compliance with all substantive zoning and subdivision ordinance requirements. Bertozzi did not file applications and plats for Sections F and G before the October 9, 1996 deadline. Neither his cursory

statement in his October 9, 1996 letter to the Planning Office that final plats for Sections F and G would be "forthcoming" nor his tentative May 1996 drawings showing Sections F and G constitute a complete application.  Thus, Bertozzi did not comply with the requirements necessary to receive the benefit of the "grandfather clause."  We hold, therefore, that the circuit court erred in ordering the County to review Sections F and G under the terms of the zoning and subdivision ordinances in effect prior to October 9, 1996.

We next address the circuit court's decision regarding Sections A through E of the subdivision.  In doing so, we must "examine the record to determine whether the evidence sustains the court's findings of fact . . . and those of the [County]."  West v. Mills, 238 Va. 162, 168, 380 S.E.2d 917, 921 (1989).

The circuit court reviewed the County's disapproval of Bertozzi's application pursuant to Code § 15.1-475(B)(3) (now Code § 15.2-2259(C)) which provides, in pertinent part:

> If a local commission or other agent disapproves a plat and the subdivider contends that such disapproval was not properly based on the ordinance applicable thereto, or was arbitrary or capricious, he may appeal to the circuit court having jurisdiction of such land and the court shall hear and determine the case . . . .

Thus, Code § 15.1-475 limits the circuit court's review to a determination regarding whether the County's disapproval was "not properly based on the ordinance applicable thereto, or was

6

arbitrary or capricious." West, 238 Va. at 168, 380 S.E.2d at 920.[3]

Despite this specific statutory directive regarding the scope of its review, the circuit court never enunciated any finding that the County's disapproval was either not based on the applicable ordinance, or was arbitrary or capricious. In fact, the court could not have made any such finding because it did not receive sufficient evidence from either party upon which to base a decision.

For example, the County applied the requirements of the so-called "Rule" to disapprove Bertozzi's applications; however, this "Rule" was an unwritten, administrative interpretation of the County's prior zoning and subdivision ordinances that is not readily apparent from reading the ordinances. Therefore, evidence regarding the existence of the "Rule," its purpose, and its prior application was crucial. Without such evidence, the circuit court could not have determined whether the County's disapproval "was not properly based on the ordinance applicable thereto, or was arbitrary or capricious."

_____

[3] This limitation on the scope of the circuit court's review does not mean that the court cannot approve a plat after finding that a disapproval was not based on the applicable ordinance, or was arbitrary or capricious. See Hylton Enter., Inc. v. Board of Supervisors of Prince William County, 220 Va. 435, 442, 258 S.E.2d 577, 582 (1979) (finding statutory language authorizes circuit court to approve plat).

Nevertheless, Bertozzi contends that on March 14, 1997, the circuit court held a hearing during which the court heard evidence and reviewed exhibits. However, correspondence between counsel reflects that the March 14, 1997 meeting with the circuit court was a "pre-trial conference" to "review the status" of the case and was not an evidentiary hearing. In addition, no transcript or written statement of facts of that conference exists. See Rule 5:11.

Furthermore, during oral argument on June 24, 1997, for the purported purpose of presenting a final decree to the court, the County noted the lack of evidence and questioned the basis for a final order. The County also included the lack of evidence in its objections to the final decree. Moreover, the circuit court stated in its decree that it had reached its decision after considering Bertozzi's petition, the County's response, memoranda, and argument of counsel. Thus, the court itself acknowledged that it did not receive or consider any evidence on the issue. Therefore, having a record devoid of any evidence and factual findings, we cannot "examine the record to determine whether the evidence sustains the court's findings of fact." West, 238 Va. at 168, 380 S.E.2d at 921.

Accordingly, we will reverse the circuit court's judgment with respect to Sections F and G and enter final judgment in favor of the County. We will also reverse the circuit court's judgment

8

as to Sections A through E, but remand the case for an evidentiary hearing regarding whether the County's disapproval of Sections A through E of the subdivision was "not properly based on the ordinance applicable thereto, or was arbitrary or capricious."

<u>Reversed and remanded</u>.