# CIRCUIT COURT OF THE CITY OF ROANOKE

Barbara Steptoe Easley,
t/a Easley's Restaurant

v.

Virginia Alcoholic
Beverage Control Board

May 15, 2001

Case No. CH00-1113

BY JUDGE CLIFFORD R. WECKSTEIN

This is an appeal, under Virginia Code § 9-6.14:16, from the Alcoholic Beverage Control (ABC) Board's decision to revoke a business establishment's license to sell alcoholic beverages.

The petitioner, Barbara Steptoe Easley, operated a nightclub, Easley's Restaurant, in the City of Roanoke. The Board revoked her "mixed beverage restaurant" and "wine and beer on premises" license. The Final Decision and Order Revoking License, entered on October 27, 2000, set forth two bases for revoking the license: (i) "the licensee allowed noisy or disorderly conduct upon the licensed premises;" and (ii) "cause exists for which the Board would be entitled to refuse to issue a license in that the place occupied by the licensee is so located that violations of the ABC Act or the laws of the Commonwealth relating to peace and good order have resulted from the issuance of the license and operation thereunder."

In a proceeding of this sort, the reviewing court has before it the "entire evidential record" of the ABC Board's proceedings. Va. Code § 9-6.14:17. The court must review the facts in the light most favorable to the Board's action and may reject the Board's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion. *Atkinson v. ABC Commission,* 1 Va. App. 172, 176, 336 S.E.2d 527 (1985) (citations omitted). "With respect to issues of fact," the duty of the court is limited by Code § 9-6.14:17 to deciding whether the Board's record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Branch v. Department of Alcoholic Beverage Control,* 21 Va. App. 242, 251, 463 S.E.2d 340 (1995). The reviewing court must determine whether the Board committed errors of law, taking due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted, or whether the Board capriciously or arbitrarily abused its discretion. *Id.*; Va. Code § 9-6.14:17. When "legal issues require a determination … less deference is required and the reviewing courts should not abdicate their judicial function and merely rubber-stamp an agency determination." *Concerned Taxpayers v. Department of Environmental Quality,* 31 Va. App. 788, 802, 525 S.E.2d 628 (2000).

The Board appointed an able hearing officer who diligently and thoroughly took evidence and rendered a carefully written decision. In my view, the hearing officer and the Board erred by concentrating on *what* happened at Easley's Restaurant while insufficiently — under the decisional law of this Commonwealth — focusing on *why* it happened.

Careful scrutiny of the record shows that, under the standards established by Virginia's appellate courts, there is no evidence to support the Board's determination that "the place occupied by the licensee is so located that violations of the ABC Act or of the laws of the Commonwealth relating to peace and good order have resulted from issuance of the license and operation thereunder."

Under the case law, it is not sufficient for the Board to have determined that "violations of the ABC Act or of the laws of the Commonwealth relating to peace and good order" took place at the licensed establishment. The Board also had to determine that there existed:

some nexus between these violations and the location of the establishment. The location, in and of itself, must [have been] a relevant factor in the causation of the violations in order to prove that the establishment "[was] so located that violations of the ABC Act or the laws of the Commonwealth relating to peace and good order

[had] resulted from issuance of the license and operation thereunder."

*Branch v. Department of Alcoholic Beverage Control*, 21 Va. App. 242, 251-52, 463 S.E.2d 340 (1995) (bracketed material in original; citations omitted).

The Court of Appeals has explained the burden on the Board:

> Even if we assume that [the] testimony was enough to establish that violations had occurred at [the licensee's establishment], there is no evidence to connect these events with the *location* of the restaurant, other than the mere fact that that is where they took place. It cannot be said that [the establishment] is so located that violations have occurred simply because a large number of calls have been made to the police regarding it. ... but there is no evidence to suggest that the location of [the establishment] contributed to the crimes. Similarly, no evidence suggests that the location of [the establishment] contributed in any way to the malicious wounding incident.

*Atkinson v. ABC Commission, supra*, at 177-78. Similar language could be used in this case. There is more than substantial evidence in the record to substantiate the proposition that multiple violations of "the laws of the Commonwealth relating to peace and good order" took place at Easley's Restaurant. There is, however, no evidence whatsoever to show that the location of the restaurant, in and of itself, the place where the establishment is, the neighborhood in which it is located, the street or lot on which it is sited, contributes in any way to causing these violations. The Board's hearing officer found that the licensed establishment is a former convenience store, located in an area composed of parking lots, various undistinguished businesses, and two-story garden-style apartments. (Record p. 110, ll. 4-8.) As the hearing officer wrote in his decision in the case, "the problem was the crowd that patronized the establishment and the actions of the licensee to cater to them" (Record p. 110, ll. 2-3.); calls for police service to the licensed establishment, ranging from homicide[1] to 911 hang-ups, "were a direct

---

[1] The Board's hearing officer's opinion reflects a reluctance on the part of a police officer to testify about the facts of the homicide call, "since the trial had not yet been held." (Record p. 110, ll. 14-15.) *Dehors* the record in this case, I have sentenced two persons for murder as a result of the incident described in the record.

outgrowth of the patrons to whom the establishment catered; namely, a high energy group of young people who migrate from one establishment to another in search of fun, alcohol, and other forms of entertainment." (Record p. 112, ll. 8-22.) No evidence presented to the hearing officer, and no factual statement in the hearing officer's case decision, supports a finding that the violations of peace and good order that took place at Easley's were caused by or related to the establishment's physical location. I "recognize that the substantial evidence standard accords great deference to the findings of the administrative agency, but even under this standard the evidence must be relevant to the conclusion reached." *Atkinson, supra,* at 178.

The Board's other basis for license revocation was its determination that the petitioner "allowed noisy or disorderly conduct upon the licensed premises," in violation of Code § 4.1-225.1(h).

In the case at bar, I am of opinion that this is a mixed question of law and fact. The hearing officer appointed by the Board took evidence about events in and around Easley's during the relevant period and about actions that the petitioner and her husband took in response to events that took place at and near their nightclub. The Board accepted the hearing officer's conclusions. Neither the hearing officer nor the Board, however, seems to have focused on a threshold question of law, the meaning of "allowed" in this statute. I raised that question at oral argument.

"Words in a statute are to be construed according to their ordinary meaning, given the context in which they are used." *Leveroni v. County of Arlington,* 18 Va. App. 626, 627, 445 S.E.2d 723 (1994) (citation omitted). When this case was argued orally, I read aloud to counsel dictionary definitions of the word "allowed," and asked what "ordinary meaning" of the word was employed by the Board and its hearing officer.[2] I asked counsel whether a licensee "allow[s]" noisy and disorderly conduct when, *e.g.,* she passively suffers such conduct to take place on the licensed premises, or when it takes place despite her efforts to prevent it; I inquired whether the licensee's degree of effort to combat such conduct affects whether she

---

As the hearing officer noted, "the licensee did not contest the fact of the murder." *Id.*

[2] In preparation of this opinion, I have consulted the CD-ROM version of the *Oxford English Dictionary,* Oxford University Press, 1999, the CD-ROM version of the *American Heritage Dictionary,* 3rd edition, Houghton Mifflin Company 1992, and *Webster's Third New International Dictionary,* Merriam-Webster, Inc., 1986. Delightful though it would be to set out the many definitions of "allowed" and "allow" that each contains, I will resist the temptation.

"allowed" the conduct. The construction of "allowed" was not a question on which counsel had focused in pre-hearing memoranda or, until it was raised by the court, in argument. Counsel seized the opportunity to address this question in post-argument briefs.

In their memoranda, counsel indicated that *Fever's, Inc. v. Alcoholic Beverage Control Bd.*, 24 Va. App. 213, 481 S.E.2d 476 (1997), contains the most relevant analysis of whether a licensee "allowed" noisy and disorderly conduct. In *Fever's*, the Board revoked the ABC license of a restaurant (on the same grounds the Board cited in the case at bar) after an outdoor festival resulted in violence, including the reported stabbing of one person, shooting of two others, and wounding of eight more.

The Court of Appeals reversed the Board's decision. In reaching its decision, the Court of Appeals took into account the conduct of the licensee. In particular, the Court considered whether the actions of the licensee of Fever's were reasonably calculated to prevent the outbreak of violence. *Id.* at 219. This is a standard often used in negligence cases and may be a useful analogy to determine the meaning of the word "allows." *See Walker v. Memorial Hosp.*, 187 Va. 5, 7, 45 S.E.2d 898 (1948). The Court pointedly noted that "the Board made no findings that suggest additional precautions that [the licensee] could have taken." *Id.*

This focus on the licensee's action is consistent with the approach taken by the Court of Appeals in cases like *Atkinson, supra*. To paraphrase *Atkinson*: Even if we assume that the testimony was enough to establish that violations had occurred at Easley's, there must be some nexus between these violations and the action or inaction of the licensee; there must be evidence to connect these events with the behavior of the licensee, other than the mere fact that this restaurant is where these violations took place. Something the licensee did, or failed to do, in and of itself, must [have been] a relevant factor in the causation of the violations.

It is not clear from the record that the Board focused on whether the licensee, Mrs. Easley, took measures reasonably calculated to curb the violence or otherwise "allowed" noisy and disorderly conduct. This is not to say, however, that the Board, if it had focused on this question, could not have made the requisite findings of fact. For that reason, final judgment in favor of the licensee would be as inappropriate as a judgment simply affirming the Board's decision.

In his opinion, later adopted by the Board, the hearing officer wrote:

> On August 21, 1999, at or about 1:50 to 1:55 a.m., a 19-year-old male was gunned down, murdered, inside the establishment. This

youth's death was not an unforeseeable event at the licensed establishment.

On July 25, 1999 ... the call for service reflects a malicious wounding of an individual. ... Like the latter incident noted above this, too, was foreseeable. ...

[T]here were twelve calls for service to the licensed address ranging from homicide, malicious wounding to 911 Hang-up. When the calls for service are broadened to include the whole 3600 block, the number of calls for service totaled twenty-eight.

These calls for service were a direct outgrowth of the patrons to whom the establishment catered; namely, a high energy group of young people who migrate from one establishment to another ... The closure of [other establishments] has prompted them to patronize Easley's Restaurant. [Each of the other establishments] failed to manage their operations in a manner which would control the patrons, the size of the crowds, the amounts of alcohol consumed, and the general rambunctiousness. That is the same situation here. It continues. Calls for service continue unabated.

It is not as though the licensee is totally hapless in responding to this high-energy group. They have, putting it in the best light possible, been minimally passive partners. They have changed the music; they have allowed the older, more stable crowd to drift away; they have remained open to the wee hours of the morning; they have sought to lease more space for the numerous cars that transport the patrons to their establishment; and, they have acknowledged the potential for problems by acquiring and using an electronic device to search for weapons. One has to ask what kind of place it is and what kind of patrons are served in a place that requires a search for weapons. ...

Where the activities proximate to a licensee can reasonably be foreseen to result in death or grave bodily harm, and where such proximate activities actually do result in death or grave bodily harm or where there can be found to be a nexus between the activities of a licensee and the adverse impact on a community, it is reasonable for the Commonwealth to sever its relationship with the licensee as that relationship is evidenced by licensure.

The hearing officer devoted great care and attention to hearing the evidence and to rendering his decision. A reviewing court, however, cannot defer to the experience and specialized competence of the agency without knowing what the agency thought it was deciding; a reviewing court cannot

accept the agency's findings of fact on a point when it is unclear to the court whether, or if, the agency made findings of fact on that point.

While I appreciate the efforts of counsel, I am, upon mature consideration, of opinion that this is not a question that a reviewing court can answer on the record of this case. The court will order that this matter be remanded to the Board for it to consider and determine, in its experience and specialized competence, and guided by this opinion, whether the licensee "allowed noisy and disorderly conduct." The Board, of course, has the discretion under the law to decide whether or not to hold a new evidentiary hearing and to decide whether to determine the matter itself on remand or to further refer the question to its hearing officer.

Mrs. Easley argued that the Board violated constitutional rights in its decision-making process. The record does not support that argument.