Present:  Carrico, C.J., Lacy, Hassell, Koontz, Kinser, and
Lemons, JJ., and Compton, S.J.

A. G. BERTOZZI                              OPINION BY
                                  SENIOR JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 001072                       April 20, 2001

HANOVER COUNTY


                FROM THE CIRCUIT COURT OF HANOVER COUNTY
                          John R. Alderman, Judge

     In this land use dispute, we consider whether the trial

court erred in ruling that a local planning commission's

disapproval of applications and plats for a subdivision properly

was based on the applicable ordinance and was not arbitrary or

capricious.

     Before the close of business on October 9, 1996, A. G.

Bertozzi, a subdivider, filed with the Hanover County Planning

Office applications for final approval of five sections, "A"

through "E," of a subdivision known as "Sugar Maple."  The

sections comprised approximately 125 acres of real property

located in an A1 agricultural district in the western part of

the County.

     During the evening of October 9, the County Board of

Supervisors adopted zoning and subdivision ordinances

significantly changing rural subdivision development

requirements.  The new ordinances include a so-called

"grandfather clause," the interpretation of which is at the core

of this controversy.  As pertinent, the grandfather clause provides:

>"Complete applications for final subdivision approval which have been filed before the close of business on October 9, 1996, which were in compliance with all substantive zoning and subdivision ordinance requirements in effect on that date shall be reviewed in accordance with those requirements."

By letter dated October 29, 1996 from the County's Deputy Director of Planning, the subdivider was notified that the applications and plats for Sugar Maple had been disapproved by the planning staff.  The subdivider appealed this ruling to the circuit court pursuant to former Code § 15.1-475(B)(3) (now Code § 15.2-2259(C)).  As pertinent, the statute provided:

>"If a local commission or other agent disapproves a plat and the subdivider contends that such disapproval was not properly based on the ordinance applicable thereto, or was arbitrary or capricious, he may appeal to the circuit court having jurisdiction of such land and the court shall hear and determine the case. . . ."

In his petition to the circuit court, the subdivider contended that disapproval of the applications and plats was erroneous, improper, and "arbitrary and/or capricious."  He asserted that the filings should have been approved because he fully complied with all applicable requirements.

Following a June 1997 hearing, at which the trial court considered only the subdivider's petition, the County's response, memoranda of the parties, and argument of counsel, but

no evidence, the court ruled in favor of the subdivider.  In a July 1997 final decree, the court ordered that the plats for the subdivision "shall be accepted" following review by the County "pursuant to the requirements of ordinances in effect prior to October 9, 1996."  The County appealed that ruling to this Court.

In Hanover County v. Bertozzi, 256 Va. 350, 504 S.E.2d 618 (1998), we reversed the judgment of the circuit court because we were presented with "a record devoid of any evidence and factual findings" on the question whether the County properly had disapproved the filings for Sections A through E.  We remanded the case "for an evidentiary hearing regarding whether the County's disapproval . . . was 'not properly based on the ordinance applicable thereto, or was arbitrary or capricious.' " Id. at 356, 504 S.E.2d at 621.

Upon remand, the trial court conducted an evidentiary hearing to consider the foregoing issues.  The subdivider presented the testimony of two persons who were familiar with the practices and procedures for subdivision development followed by the County planners in districts zoned A1.  Also testifying for the subdivider was a civil engineer who had prepared the filings for the Sugar Maple subdivision, as well as for another proposed County subdivision, Pin Oak Place, which the subdivider previously developed.

3

This evidence established that for years prior to October 9, 1996 the County planners routinely had employed a "25-acre Rule," an unwritten administrative interpretation of the zoning and subdivision ordinances. Under the "Rule," developers were permitted to subdivide land into more lots than would have been permitted under a strict interpretation of the ordinances.

According to the testimony, the "Rule" allowed a developer to divide a large parcel into tracts of approximately 25 acres, "and then go through the subdivision process on each of those tracts," yielding "four lots per every 25 acres or 16 lots per hundred, as opposed to . . . 10 lots per hundred." The four-lot arrangement was accomplished by dividing the 25-acre tract into a two-acre "first division," two ten-acre lots, and a three-acre residual lot. The "first division" lot was not considered a part of the subdivision subject to review for subdivision approval; that lot was not to be included on the subdivision plat.

This procedure, described as "convoluted" by the County's Director of Planning, affected the application process. Under the procedure, a developer would file an "Application for Final Approval" with the County Planning Office together with a subdivision plat, accompanied by the required fees. The subdivider was not required to have recorded a "first division" deed at that time.

4

The application would then be reviewed by the planners, who would notify the applicant of any revisions to the plat they required for final approval. Typically, a required revision specified removal of "the first divisions from these plats by removing the bold lines from their perimeter, adding their proper deed book and page number, and half-toning this information." When the suggested revisions were made, including recordation of the "first division" deeds, the applications and the plats received the County's final approval.

The evidence established that this practice and procedure generally had been followed by the County since 1978; it specifically had been followed when this subdivider developed the Pin Oak Place subdivision in 1995.

When the subdivider filed the applications and plats for Sugar Maple on October 9, 1996, he employed the foregoing application procedure that existed under the ordinances in effect immediately prior to that date. Specifically, he did not include a deed book and page number for the "first division" lots related to development of Sections A through E, although such lots were shown on the plats.

In disapproving these applications in the letter of October 29, the County stated that the "new ordinance eliminated . . . both 'first divisions' and 'the 25 acre rule' as interpretations of the zoning and subdivision ordinances."

Continuing, the County wrote that the "staff has completed its review of your application and is notifying you that your subdivision plat and application, filed on October 9, 1996, titled 'Sugar Maple', . . . is DISAPPROVED because of failure to record first division lots (Title I. Art 5. Sec. 2.7-1)." Section 2.7-1 of the County Code related to lot size requirements for single family dwellings and provided: "2 acres, after the first conveyance all lots must be 10 acres or greater."

At the conclusion of the evidentiary hearing, the trial court ruled in favor of the County. The court rejected the subdivider's argument that, according to the provisions of the grandfather clause of the new ordinances, his applications and plats should have been considered according to the County's practices and procedures employed under the old ordinances.

The court responded that, after October 9, the "first division" lots were required to be recorded at the time the application was filed. Continuing, the court said: "My reading of the grandfather clause means that everything has to have been done because of the artificial barrier that was placed on October 9. After October 9, the Planning Commission, the County, couldn't do what had been done before, which was a process of application amendment and, ultimately, approval. The

6

County was not empowered to do it after that so the process became, in effect, a one-day process."

In a February 2000 final decree, the trial court dismissed the subdivider's petition, finding that the County's "disapproval was properly based on the applicable ordinances and was not arbitrary or capricious." The subdivider appeals.

The County, urging affirmance of the trial court's order, contends in a circular argument that in "applying [the grandfather clause], the County staff gave applicants the benefit of the Rule in determining whether applications were filed 'in compliance with all substantive zoning and subdivision requirements. . . .' In the case of Sugar Maple, Sections A through E, the staff determined that there was not compliance with the requirements of the Rule. The Subdivision did not comply with substantive provisions of either old or new ordinances, in that lot sizes were less than the old or new (ten acre) minimums, and the divisions were not made correctly." We do not agree that the County's disapproval properly was based on the applicable ordinances, and the trial court erred in so ruling.

As demonstrated by the foregoing portion of its argument, the County in one breath says that, in applying the grandfather clause, the "staff gave applicants the benefit of the Rule." But in the next breath, the County says that the Sugar Maple

filings were "not in compliance with the requirements of the Rule."  This argument disregards the evidence.

There is no conflict in the evidence about the provisions and administration of the "25-acre Rule."  Indeed, the testimony of John Howard Hodges, the County's Director of Planning in October 1996, corroborates the testimony of the subdivider's witnesses about the practice and procedure the County routinely followed under the old ordinances in allowing "first division" lots to be recorded under the "Rule" subsequent to filing of the application.  As a matter of fact, reasonably to be inferred from the evidence is the conclusion that the County Board of Supervisors recognized and tacitly approved the planning staff's employment of the "Rule" under the old ordinances.  When the trial court, referring to the "Rule," asked Hodges, "Whose bright idea was that?", Hodges responded, "The Board of Supervisors always does the right thing."

The grandfather clause mandates that if "complete" applications for final subdivision approval have been filed before the close of business on October 9, 1996, and if such applications were "in compliance with all substantive zoning and subdivision ordinance requirements" then effective, those applications shall be reviewed in accordance with those requirements.  The County does not dispute that the applications

the subdivider filed for the sections of Sugar Maple at issue here were "complete."

Rather, the County maintains the applications failed to comply with old or new substantive ordinance requirements.  But the evidence is clear that, under the County's administrative interpretation of the substantive requirements of the old ordinances, "first divisions" were permitted under the "25-acre Rule," and the first division deed did not have to be recorded when the applications were filed initially, as long as they were recorded prior to final approval.  For purposes of this discussion, it is irrelevant that the applications did not comply with the new substantive ordinance requirements.

Incidentally, the County does not contend that employment by its planners of the "25-acre Rule" was an impermissible administrative interpretation or that it was prohibited legislative action taken by an administrator, as discussed in cases like Board of Zoning Appeals for the County of York v. 852 L.L.C., 257 Va. 485, 489, 514 S.E.2d 767, 769-70 (1999). Indeed, the County's October 29 letter of disapproval refers to the "first divisions" and the "Rule" as its "interpretations" of the ordinances.

Therefore, we hold that, under the grandfather clause, this subdivider is entitled to have his "complete" Sugar Maple (Sections A through E) applications reviewed in accordance with

9

the pre-existing substantive ordinance requirements, as interpreted employing the pre-existing "Rule." Cognizant of the "Rule," the County Board of Supervisors, in enacting the grandfather clause, manifestly intended such a result.

This means that the County is prohibited from requiring the deed book and page number of "first division" lots to be included in the applications and plats initially, as long as such information is provided prior to final County approval of the applications and plats. In other words, the former standards must be applied to applications and plats filed, as here, before the close of business on October 9, 1996.

Consequently, the judgment below will be reversed, and the case will be remanded with direction that the circuit court order the County to accept the applications and plats in issue and that they be reviewed by the County in accordance with the standards existing when they were filed on October 9, 1996.

<u>Reversed and remanded.</u>

JUSTICE KINSER, with whom JUSTICE LACY joins, dissenting.

As the majority correctly notes, the interpretation of the so-called "grandfather clause" is the central controversy in this case. Because I believe that the majority fails to interpret that clause according to its plain, unambiguous terms, I respectfully dissent.

10

The "grandfather clause" at issue in this appeal provides that "[c]omplete applications for final subdivision approval which have been filed before the close of business on October 9, 1996, which were in compliance with all substantive zoning and subdivision ordinance requirements in effect on that date shall be reviewed in accordance with those requirements."  Hanover County, Va.,  Subdivision Ordinance No. 96-17, § 8(4)(a)(Oct. 9, 1996).  I find the terms of that clause to be plain and unambiguous.  Thus, "there is no need for construction by the court; the plain meaning and intent of the enactment will be given it."  Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985) (citing School Bd. v. School Bd., 219 Va. 244, 250, 247 S.E.2d 380, 384 (1978)); accord Dairyland Ins. Co. v. Sylva, 242 Va. 191, 194, 409 S.E.2d 127, 129 (1991).  Thus, to trigger the right of A.G. Bertozzi to have his application for final approval of the subdivision known as "Sugar Maple" reviewed under Hanover County's prior subdivision ordinances, his application must have been "in compliance with all substantive zoning and subdivision ordinance requirements in effect" before October 9, 1996.

For purposes of this appeal, the relevant substantive requirement in effect before the October 9th deadline was former § 2.7-1 in Title I, Article 5 of the Hanover County Code.  That

section, along with the definition of the term "subdivision,"[*] formed the basis for the administrative interpretation known as the "25-acre Rule." Section 2.7-1 stated that the minimum lot size for a single family dwelling was "2 acres, after the first conveyance all lots must be 10 acres or greater." The term "conveyance" means the "transfer of title to land from one person, or a class of persons, to another by deed." Black's Law Dictionary 333 (6th ed. 1990).

In my view, the provisions of § 2.7-1 required an actual conveyance of the two-acre "first division" lot before a subdivider, such as Bertozzi, could submit an application for final approval of a subdivision utilizing the "25-acre Rule." Under the "grandfather clause," compliance with that substantive requirement had to occur before the close of business on October 9, 1996. While I recognize that the County had developed a practice that allowed a subdivider to file an application for final approval before recording the deed evidencing conveyance of the "first division" lot, that practice was not part of the substantive zoning and subdivision ordinance requirements in effect before October 9, 1996. The "grandfather clause" requires compliance with substantive subdivision requirements, not compliance with the County's prior practice or procedure.

---

[*] A subdivision for tracts of this size was a "division of a tract or parcel of land into three (3) or more parts, any of which contain an area of

Yet, the majority allows Bertozzi's application for final approval of the subdivision to be reviewed in accordance with that practice.

Notably, Bertozzi's application was not the only one denied after October 9th because the subdivider failed to record a deed evidencing a "first division" conveyance before submitting an application for final approval. John Howard Hodges, Deputy County Administrator for Hanover County, testified that no one was allowed to record a two-acre "first division" after October 9th. During cross-examination, he reiterated that any applications received before the deadline that did not have the "first division" were not approved. The County's consistent construction of the "grandfather clause" is entitled to great weight. See Cook v. Board of Zoning Appeals, 244 Va. 107, 111, 418 S.E.2d 879, 881 (1992) (citing Masterson v. Board of Zoning Appeals, 233 Va. 37, 44, 353 S.E.2d 727, 733 (1987)).

Thus, I believe that the circuit court correctly determined that the County's disapproval of Bertozzi's application was based on the applicable ordinances and was not arbitrary or capricious. Bertozzi did not convey a "first division" lot prior to the close of business on October 9th. Thus, he did not comply with the substantive subdivision ordinances in effect

---

ten(10) or more acres, but less than twenty-five (25) acres . . . ." Hanover County, Va., Zoning Ordinance Title III, Article 5, § 2-6 (Sep. 27, 1972).

prior to the October 9th deadline.  Additionally, there is no evidence that the County did not consistently interpret and apply the provisions of the "grandfather clause."  For these reasons, I would affirm the judgment of the circuit court.