Present:  All the Justices

JOYCE S. FRITTS, ET AL.
                                        OPINION BY
v.  Record No. 002120        JUSTICE LAWRENCE L. KOONTZ, JR.
                                     September 14, 2001
CAROLINAS CEMENT COMPANY, GP,
 T/A ROANOKE CEMENT COMPANY, ET AL.

              FROM THE CIRCUIT COURT OF WARREN COUNTY
                    John E. Wetsel, Jr., Judge


     This appeal arises out of a petition by certain landowners, filed in the trial court, for a writ of certiorari to review a decision by a local board of zoning appeals.  At issue is the trial court's affirmance of the board's decision permitting the construction of a nearby industrial facility as a by-right use under the applicable zoning ordinance.

                            BACKGROUND

     In August 1999, Carolinas Cement Company, GP, trading as Roanoke Cement Company (Carolinas Cement), began negotiations to purchase a parcel of land containing approximately seven acres and located in the Kelley Industrial Park in Warren County from the Warren County Economic Development Authority (EDA).  Carolinas Cement intended to construct a bulk cement and flyash terminal on this property.  Kelley Industrial Park is the site of several industrial operations including a DuPont chemical manufacturing facility and "other industrial-type buildings and structures."  The DuPont facility includes several storage

silos, at least one of which is over one hundred feet in height. The Norfolk Southern Railroad borders the southeastern edge of the industrial park.

East of the railroad is a residential community that was developed after the establishment of the industrial park. Joyce S. Fritts and Tommy R. Fritts (collectively, the Fritts) own a home located a short distance from the railroad and about one-half mile away from Carolinas Cement's proposed terminal.

The proposed terminal primarily consists of two 75-foot storage buildings, described by the parties as "silos," connected to a small office building and a concrete parking lot. The terminal is designed to function so that, essentially, dry cement is shipped to the facility by rail, unloaded through sealed pipes into the silos, and subsequently transferred from the silos into tanker trucks for delivery to customers.

As a result of its initial negotiations with the EDA, Carolinas Cement modified the facility's design and incurred development expenses totaling $11,700 before finally reaching an agreement with the EDA in late August 1999 to purchase the property for $75,000. Carolinas Cement and the EDA did not complete a formal contract of sale at that time, however, because the agreement was subject to final approval by the EDA's board at its September 3, 1999 public meeting.

On September 15, 1999, Carolinas Cement filed a by-right use application with the Warren County Department of Planning and Zoning for approval to build the proposed terminal.[1] Carolinas Cement asserted that the terminal qualified as a "[w]arehousing and distribution" facility, a by-right use, under § 180-28(B)(10) of the Warren County Zoning Ordinance. On October 8, 1999, the Warren County Deputy Zoning Administrator gave initial approval to the by-right use application finding that the proposed terminal "fits the definition of a distribution facility." On October 13, 1999, the Warren County Planning Commission affirmed this determination.

The Fritts appealed the Planning Commission's decision to the Warren County Board of Zoning Appeals (BZA). The Fritts maintained that the proposed terminal was not a by-right use, but rather was a storage yard that would require a conditional use permit under the zoning ordinance. During the hearing on that appeal, the BZA received expert testimony presented by witnesses for the Fritts and Carolinas Cement. On April 5, 2000, the BZA determined that the proposed terminal, including

---

[1] This application was signed by Carolinas Cement as the applicant and by the EDA as the owner of the property at that time. On November 12, 1999, the EDA's board formally voted to approve the sale of the property to Carolinas Cement. The delay in the final approval of the sale resulted from legal proceedings challenging the sale of the property. Those proceedings have been settled and, thus, are not related here because they are not pertinent to our resolution of this appeal.

3

its "silos," constituted a warehousing and distribution facility and, thus, was a by-right use under the zoning ordinance.

The Fritts filed a petition in the Circuit Court of Warren County (the trial court) for a writ of certiorari to review the BZA's decision. On May 26, 2000, the trial court heard the parties' arguments and examined the records of the BZA proceeding. In an order dated May 31, 2000, the trial court found that the BZA correctly determined that the "[cement] storage and distribution facility proposed to be built by [Carolinas Cement] is clearly a 'warehousing and distribution' facility within the meaning of Warren County Zoning Ordinance § 180-28." The trial court emphasized that "[t]he BZA correctly focused its analysis on the proposed use of the property, which was to receive, store, and distribute cement," rather than "on the physical characteristics of the structures housing the use." By an order dated January 17, 2001, we awarded the Fritts this appeal.

DISCUSSION

Initially, we reject the argument made by the Fritts that Carolinas Cement lacked standing to apply for a by-right use permit because it did not have a vested property right in the proposed development site. The Fritts asserted this contention before the BZA and then the trial court, and reassert it on appeal. We hold that, under the specific facts of this case, at

4

the time its application was filed Carolinas Cement had more than a mere expectation that it would be able to acquire the property from the EDA and that it thus had sufficient interest in the property to begin the application process.  Cf. Hoffman Family, L.L.C. v. Mill Two Associates Partnership, 259 Va. 685, 693-94 529 S.E.2d 318, 323-24 (2000).  Moreover, Carolinas Cement became the contract purchaser of the property on November 12, 1999, well before the BZA decision on April 5, 2000.  In this regard, the trial court correctly determined that any lack of standing by Carolinas Cement was "cured" for purposes of the proceedings conducted by the BZA.

The dispositive issue in this appeal is whether the trial court correctly ruled that Carolinas Cement's proposed terminal fell within the meaning of the phrase "[w]arehousing and distribution facilities" as used in § 180-28(B)(10) of the zoning ordinance.  The principles relevant to the construction of a zoning ordinance, whether by a court or by a board of zoning appeals, are well-established.  "The words of the ordinance are to be given their plain and natural meaning [and the] purpose and intent of the ordinance should be considered." Donovan v. Board of Zoning Appeals, 251 Va. 271, 274, 467 S.E.2d 808, 810 (1996); accord Higgs v. Kirkbride, 258 Va. 567, 573, 522 S.E.2d 861, 864 (1999); see also Hanover County v. Bertozzi, 256 Va. 350, 354, 504 S.E.2d 618, 620 (1998).

5

The Fritts contend that the "silos" that will constitute the principal structures of the terminal are not "warehouses" and, thus, the property as a whole would not be used as a "warehousing and distribution" facility. Since the zoning ordinance does not define "warehouse," the term must be given its "plain and natural meaning." A warehouse is "a structure or room for the storage of merchandise or commodities." Webster's Third New International Dictionary 2576 (1993).

While Carolinas Cement's proposed terminal would, in principal part, take the form of two silos, the determinative factor is that these silos are structures used to store cement, which is a commodity. We agree with the trial court's analysis that, generally, the function, rather than the form of a structure, is relevant to defining the use under the zoning ordinance. Accordingly, we hold that the proposed terminal would be used for "warehousing" as that term is contemplated in the zoning ordinance.

The Fritts further contend that even if the proposed terminal satisfies the "warehousing" portion of the ordinance, it must also serve as a "distribution" facility. The ordinance, in § 180-8, defines a distribution facility as "[a]n establishment engaged in the receipt, storage and distribution of goods, products, cargo and materials, including transshipment by rail, air or motor vehicle." The proposed terminal clearly

6

satisfies this definition as it would be used to receive, store, and distribute dry cement by rail and tanker trucks. Accordingly, we need not determine whether the Fritts' interpretation of the zoning ordinance as requiring a warehousing and distribution facility to serve both functions in order to qualify as a by-right use is correct, because in this instance Carolinas Cement's proposed terminal would do so.

CONCLUSION

For these reasons, we hold that the trial court did not err in ruling that Carolinas Cement's proposed cement and flyash terminal is a warehousing and distribution facility, permitted by right under the Warren County Zoning Ordinance. Accordingly, the judgment of the trial court will be affirmed.[2]

Affirmed.

---

[2] Because of our resolution of the dispositive issue, we need not address the issues raised by Carolinas Cement on cross-error.