JUSTICE KEENAN,
with whom CHIEF JUSTICE HASSELL and JUSTICE KOONTZ join, concurring in part, dissenting in part.
Contrary to the language of Code § 15.2-2307, the majority’s holding permits the creation of a vested property right based on general conceptual land use plans accompanying a rezoning, rather than on evidence of a “specific project” as required by the statute. In addition, contrary to the statutory requirement that a landowner also act in “diligent pursuit” of a “specific project” to secure a vested property right, the majority allows actions taken five or more years after the relevant governmental act to constitute such “diligent pursuit.” These holdings effectively alter the statute and permit the establishment of vested rights that do not comply with the terms and conditions provided by the General Assembly in Code § 15.2-2307. Therefore, I respectfully dissent from that part of the majority’s opinion affirming Etheridge’s vested rights in the portion of the 154-acre tract not covered by the Planter’s Station subdivision plat.
Code § 15.2-2307 provides, in relevant part that:
[A] landowners’ rights shall be deemed vested in a land use and such vesting shall not be affected by a subsequent amendment to a zoning ordinance when the landowner (i) obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project, (ii) relies in good faith on the significant affirmative governmental act, and (iii) incurs extensive obligations or substantial expenses in diligent pursuit of the specific project in reliance on the significant affirmative governmental act.
For the purposes of this section and without limitation, the following are deemed to be significant affirmative governmental acts allowing development of a specific project: (i) the governing body has accepted proffers or proffered conditions which specify use related to a zoning amendment; (ii) the governing body has approved an application for a rezoning for a specific use or density; (iii) the governing body or board of zoning appeals has granted a special exception or use permit with conditions; (iv) the board of zoning appeals has approved *151 a variance; (v) the governing body or its designated agent has approved a preliminary subdivision plat, site plan or plan of development for the landowner’s property and the applicant diligently pursues approval of the final plat or plan within a reasonable period of time under the circumstances; or (vi) the governing body or its designated agent has approved a final subdivision plat, site plan or plan of development for the landowner’s property.
In the present case, the trial court determined that the 1988 rezoning was a “significant governmental act,” within the meaning of Code § 15.2-2307, and held that Etheridge took sufficient steps to secure a vested right in the entire property by expending funds relative to the development of that “entire tract.” I disagree with the majority’s analysis, which largely adopts the trial court’s reasoning, for three basic reasons.
First, the majority states that the 1988 rezoning was “specifically directed” to “an identifiable property and project” but does not explain how the rezoning “allow[ed] development of a specific project,” as required by the language of Code § 15.2-2307. Instead, the majority effectively concludes that this statutory requirement was met because the 1988 rezoning involved a particular tract of land, which was depicted in conceptual land use plans.
The 1988 rezoning, however, did not allow development of any specific project, but merely changed the zoning of Etheridge’s property from “Rural Residential” to “PD-H.” Moreover, this rezoning, on which the majority relies to establish a vested right under Code § 15.2-2307(ii), was not a “rezoning for a specific use or density” within the meaning of that provision because the rezoning did not mandate any particular use of the property and did not limit development to any specific density. Instead, the 1988 rezoning permitted a wide variety of densities, as illustrated by the 1988 Master Plan (the 1988 plan).* Further, the 1988 plan showed only general locations for various basic types of development.
The General Assembly’s intended meaning of the term “specific project” is illustrated in the second paragraph of Code § 15.2-2307, which provides several examples of actions that “are deemed to be significant affirmative governmental acts allowing development of a specific project.” On brief and at oral argument in this appeal, Ether *152 idge relied on category (v) of the second paragraph, with its reference to a “plan of development,” in support of its vested rights contention. Etheridge asserted that the 1994 Conceptual Land Use Plan (the 1994 plan), which showed only general use categories for the property, was a “plan of development” within the meaning of category (v). Thus, Etheridge argued that the 1988 rezoning and adoption of the 1994 plan satisfied the statutory requirement of demonstrating “a significant affirmative governmental act . . . allowing development of a specific project.”
The majority does not address category (v), which is central to an analysis of this vested rights claim. With respect to category (v), I would hold that neither the 1988 nor the 1994 plan qualifies as a “plan of development” under that category for purposes of demonstrating the existence of a “specific project.”
Under the terms of category (v), before such a plan can be considered evidence of a “specific project,” the landowner must have “diligently pursue[d] approval of the final plat or plan within a reasonable period of time under the circumstances.” By their very nature, the 1988 and 1994 plans were conceptual in nature and were not subject to further approval as a “final plat or plan” detailing the manner in which the property would actually be developed.
The conceptual nature of these plans was emphasized by Etheridge’s planning consultant in an exhibit received in evidence in this case. In that document, the consultant observed that the “[ljand uses proposed for the development will be generally located as indicated on the [1988] Plan.” Thus, Etheridge’s own evidence demonstrates that the 1988 and 1994 plans cannot qualify as a “plan of development” creating a “specific project,” within the meaning of category (v) in Code § 15.2-2307.
The only evidence of a “specific project” in the present record is the preliminary subdivision plat for Planter’s Station, which relates to only a portion of Etheridge’s entire tract. Manifestly, this plat cannot establish the existence of a “specific project” for the remaining portion of the tract not covered by the plat. Thus, I would conclude that although the 1988 rezoning was a significant affirmative governmental act within the meaning of Code § 15.2-2307, that rezoning was not an act that “allow[ed] development of a specific project” encompassing Etheridge’s entire property.
My second disagreement with the majority’s analysis is that it effectively accords Etheridge’s entire tract the status of a “specific project” simply because certain actions taken by Etheridge ultimately *153 could benefit the entire tract. Any such benefit to the entire tract is purely conjectural, however, because no specific plan has been approved for its development. Given the absence of any specific plan of development for the entire site, development beyond the boundaries of the preliminary subdivision plat may not ever occur in any manner now being evaluated by Etheridge. I cannot conclude that the General Assembly intended that the term “specific project” in Code § 15.2-2307 be applied in this manner to allow the creation of a vested right that is so wholly indefinite in both time and scope.
My third disagreement with the majority’s analysis is that the vested right accorded Etheridge effectively negates the statutory requirement that any such right be based on the “diligent pursuit” of a “specific project.” In applying the term “diligent pursuit,” I would assign the word “diligent” its usual and common meaning. Fritts v. Carolinas Cement Co., 262 Va. 401, 405, 551 S.E.2d 336, 339 (2001); Murphy v. Norfolk Cmty. Servs. Bd., 260 Va. 334, 339, 533 S.E.2d 922, 925 (2000). That meaning imparts “steady, earnest, attentive, and energetic application and effort.” See Webster’s Third New International Dictionary 633 (1993). The uncontested facts of record show that Etheridge did not begin to make any application or effort in pursuit of any project until five years after the 1988 rezoning. Thus, if Etheridge’s actions in 1993 and thereafter are sufficient to satisfy the statutory term “diligent pursuit,” this term will place no practical or meaningful restriction on the acquisition of vested rights, in contravention of the clear language of Code § 15.2-2307.
Accordingly, I would hold that the trial court’s application of Code § 15.2-2307 was plainly wrong, and that Etheridge did not have a vested right in the portion of its property not covered by the Planter’s Station preliminary subdivision plat. I would enter final judgment reversing this part of the trial court’s judgment, and affirming the part of the court’s judgment holding that Etheridge had vested rights in the portion of its property included in the Planter’s Station subdivision plat.
*154 [[Image here]]

 See the attached copy of the 1988 plan.